**In the Matter of Bradford ARTHUR.**

**Misc. No. 81–002M.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Nov. 24, 1981.

Bradford Arthur, pro se.

Searle J. Barry, Ardmore, Pa., for respondent Arthur.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This is an action dealing with the unauthorized practice of law in a bankruptcy proceeding. While it has been said that courts should not endeavor to formulate a precise definition of what constitutes the "practice of law", because such a definition may be more likely to invite criticism than to achieve clarity, this Court is compelled to invoke its broad equity powers to develop and define the parameters of the practice of law in a bankruptcy proceeding. For this Court to do otherwise, would jeopardize not only the judicial integrity of this forum but, more importantly, would endanger the public's interest in competent legal representation and deprive them of proper representation in the pursuit of justice. It must be emphasized, however, that our findings of fact and conclusions of law are limited to the unique and rather troubling set of circumstances *sub judice.*

The issue presently before the Court is whether an individual is engaged in the unauthorized practice of law when the individual performs various services of a legal nature for a fee and is not a member of any bar nor authorized to practice law in any jurisdiction. These services include: (1) advising and counseling "clients" as to the various provisions of the Bankruptcy Code, including exemptions, dischargeability and the automatic stay, (2) advising and counseling members of the general public on the relative advantages of filing a petition for liquidation under Chapter 7 of the Bankruptcy Code (the Code) versus filing a petition for an adjustment of debts under Chapters 11 or 13 of the Code, (3) actually (and almost exclusively) preparing and filing Chapter 7 petitions and (4) preparing and filing applications to pay filing fees in installments. For the reasons set forth below, we hold that the various services which the respondent performs constitute the practice of law. The proper protection of the members of the public demands that no person be permitted to perform these legal services in connection with a bankruptcy proceeding unless he is a member of the bar and is subject to the requirements and regulations of the legal profession. Accordingly, the respondent is hereby restrained and enjoined from performing these services and is directed to comply fully with the Order of this Court. Failure to comply with any provision of this Order will result in the imposition of sanctions.

On March 18, 1981, in response to an Order issued March 2, 1981, the respondent, Bradford Arthur, appeared before this Court to show cause why he should not be held in contempt for the unauthorized practice of law. The controversy centers around the respondent's involvement in the preparation and filing of bankruptcy petitions and other legal instruments, as well as providing counseling and advice to debtors who subsequently file a bankruptcy petition and proceed on a pro se basis. Respondent was duly sworn and represented by counsel at this hearing, who stipulated that this Court should incorporate and consider the evidence presented at a prior hearing held before the Honorable Emil F. Goldhaber on March 18, 1981.

## FINDINGS OF FACT

Respondent, Bradford Arthur, is not a member of any bar nor authorized to

practice law in any jurisdiction. N.T. p. 3 (J. Goldhaber).

■ The sole occupation of the respondent, Bradford Arthur, is the preparation and filing of bankruptcy petitions. N.T. p. 2 (J. Goldhaber).

■ Respondent, Bradford Arthur, provides explanations, advice and recommendations concerning the exemptions, dischargeability and the automatic stay provisions of the Code. N.T. p. 10 (J. Goldhaber).

■ Respondent, Bradford Arthur, provides advice and counseling on the relative advantages of filing a petition for liquidation under Chapter 7 of the Code, versus filing a petition for an adjustment of debts under Chapter 13 of the Code. N.T. p. 4, 5 (J. Goldhaber).

■ Respondent, Bradford Arthur, prepares and files Chapter 7 bankruptcy petitions. N.T. p. 7 (J. Goldhaber).

■ Respondent, Bradford Arthur, prepares and files applications to enable the debtor to pay the filing fee on an installment basis. N.T. p. 7 (J. Goldhaber).

■ Respondent, Bradford Arthur, provides advice and counseling on the automatic stay provisions of 11 U.S.C. § 362 and their effect upon foreclosure actions or proceedings. Respondent's advice on the § 362 automatic stay provisions includes advising and counseling the debtors that by filing a copy of the bankruptcy petition with the Sheriff's office, a foreclosure sale will be prevented. N.T. p. 15, 16 (J. Goldhaber).

■ Respondent, Bradford Arthur, receives compensation for the services rendered in the amount of $160.00 per petition filed. N.T. p. 6 (J. Goldhaber).

■ Respondent, Bradford Arthur, actively solicits "clients" through the use of newspaper advertisements (see Exhibit # 1) and business cards (see Exhibit # 1). N.T. p. 3 (J. Goldhaber).

■ Respondent, Bradford Arthur, as of March 18, 1981, has filed approximately seventy-five (75) bankruptcy petitions in the United States Bankruptcy Court for the Eastern District of Pennsylvania. N.T. p. 2 (J. King).

■ Respondent, Bradford Arthur, pursuant to an Order of this Court, was directed to file a list detailing all of the bankruptcy petitions he has either filed or provided the debtor with counseling to file. N.T. p. 2 (J. King). [As of the date of this Memorandum, no list has been filed with this Court.]

■ On March 18, 1981, respondent's counsel requested permission to file a memorandum of law on the issue of whether respondent's actions constituted the "unauthorized practice of law". This Court granted the request. N.T. p. 22–23 (J. Goldhaber). [As of the date of this Memorandum, no brief has been filed either by respondent or by respondent's counsel.]

## DISCUSSION

■ In determining whether respondent's actions constitute the unauthorized practice of law, considerable guidance can be found in 42 Pa.Cons.Stat.Ann. § 2524 (Purdon).[1] Section 2524 states:

Any person who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counsellor, or the equivalent in any language, in such manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with the act of July 9, 1970 (P.L. 461, No. 160), known as the "Professional Corporation Law", commits a misdemeanor of the third degree. *Id.* at § 2524.

---

1. Section 2524 is derived from Pa.Stat.Ann. tit. 17, §§ 1608–10 (Purdon) (repealed). Further, Section 1610 (repealed) does not threaten rights protected by the Due Process clause of the Fourteenth Amendment, since a license to practice law is a privilege, and the statute is not unconstitutionally vague. *Dauphin County Bar Ass'n. v. Mazzacaro*, 465 Pa. 545, 351 A.2d 229 (1976).

Although section 2524 sets forth certain acts which constitute the unauthorized practice of law within this jurisdiction, we are not restricted by its statutory provisions. The power to regulate and define what constitutes the practice of law is vested in the judiciary,[2] and not in the executive or legislative branches of the government. Furthermore, the legislature has the authority to place additional penalties upon those who engage in the unauthorized practice of law.[3] In other words, courts have the inherent authority, independent of statute, to decide what acts constitute the practice of law.[4] In determining whether respondent's actions constitute the practice of law, we must look not only to the relevant statutory provisions, but also to the unique facts and circumstances surrounding this controversy.

■ Before we can determine what acts constitute the practice of law within the purview of a bankruptcy proceeding, an analysis of the policy considerations involved is mandated. The stringent requirements for the practice of law are intended to protect and secure the public's interest in competent legal representation. The paramount position of the public interest was recognized by Justice (later Chief Justice) Stern in *Shortz v. Farrell*, 327 Pa. 81, 193 A. 20 (1937):

> While, in order to acquire the education necessary to gain admission to the bar and thereby become eligible to practice law, one is obliged to 'scorn delights, and live laborous days', The object of the legislation forbidding practice to layman is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure to the

public adequate protection in the pursuit of justice, that which society knows no loftier aim. 372 Pa. at 91, 193 A. at 24.

*See also, Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883 (1934); Note, *The Unauthorized Practice of Law by Laymen and by Lay Associates*, 54 Cal.L.Rev. 1331 (1966). Furthermore, a layman who seeks legal services is often unable or unqualified to judge whether he will receive proper professional attention. The entrustment of a legal matter may well involve the confidences, the reputation, the property, the freedom, or even the life of the client. To bestow such a responsibility upon an individual who is not subject to the regulations of the legal profession would result in grave and injurious consequences for all parties involved. *See e. g., Burch v. Mellor*, 43 D. & C. 597 (1942). In addition, the entrustment of legal affairs to one untrained and unauthorized to practice law effectively precludes the client from pursuing the civil remedy of a malpractice action should the practitioner act negligently in the performance of his duties. *Dauphin*, 465 Pa. at 545, 351 A.2d at 229.

■ With these principles and policy considerations in mind, we turn to the difficult question of whether the services respondent renders constitute the practice of law. As generally understood, the practice of law involves the performance of services in a court of law in conformity with the adopted rules of procedure. *Smallberg v. State Bar of California*, 212 Cal. 113, 297 P. 916 (1931); *Stern v. State Bd. of Law Examiners*, 245 Ind. 526, 199 N.E.2d 850 (1964). However, it is not confined to performing services in an action pending before the courts.[5] It also includes the preparation of

---

2. *See Weems v. Supreme Court Committee on Professional Conduct*, 257 Ark. 673, 253 S.W.2d 900 (1975); *Public Service Commission v. Hahn Transportation Inc.*, 253 Md. 571, 253 A.2d 845 (1969); *Frazee v. Citizens Fidelity Bank & Trust Co.*, 393 S.W.2d 778 (Ky.1965); *Conway-Bogue Realty Investment Co. v. Denver Bar Ass'n.*, 135 Colo. 398, 312 P.2d 998 (1957).

3. *See, State ex rel State Bar of Wisconsin v. Bonded Collection, Inc.*, 36 Wis.2d 643, 154 N.W.2d 250 (1967).

4. *See, Darby v. Mississippi State Bd. of Bar Admissions*, 185 So.2d 684 (Miss.1966). *See also, In re Unauthorized Practice of Law in Cuyahoga County*, 175 Ohio St. 149, 192 N.E.2d 52, *affirmed* 193 N.E.2d 738, *cert. denied*, 376 U.S. 970, 84 S.Ct. 1136, 12 L.Ed.2d 85 (1964).

5. *Virgin Islands Bar Ass'n. v. Dench*, 124 F.Supp. 257 (D.C.Vir.1953).

legal instruments and contracts by which legal rights are secured, although such matters may or may not be pending in the courts. 7 C.J.S. Attorney-Client § 29 (1980).

The standard which has been articulated in Pennsylvania is that one is engaged in the practice of law whenever and wherever the services require legal knowledge, training, skill, and ability beyond those possessed by the average man. *Shortz*, 327 Pa. at 85, 193 A. at 20. *See also, Blair v. Motor Carriers*, 40 D. & C. 413 (1939).

We are convinced that the mere act of filling in the various sections of a printed form of bankruptcy petition requires no special training, knowledge or ability of a legal nature. Yet, we are not confronted with the mere preparation of a petition. Respondent provides advice and counseling on the relative advantages of filing a petition for liquidation under Chapter 7 versus filing a petition for an adjustment of debts under Chapter 13. The question of whether to file a petition pursuant to Chapter 7 or Chapter 13 of the Code, involves the analysis of a complex and highly sophisticated series of statutory and common law provisions. To make this determination, one must not only be well-versed in the various exemption and dischargeability provisions of the Code, but must also be knowledgeable of the nature and effect of the rights asserted in a bankruptcy proceeding by either secured or unsecured creditors.

In addition, a debtor who files a petition under Chapter 7, acting pursuant to erroneous advice rendered by one unqualified to practice law, runs the risk of suffering grave and injurious consequences. This Court is well aware of many instances where debtors mistakenly file a Chapter 7 petition only to discover during the course of the proceeding that they are unable to protect and retain property interests in their personal residences. In most instances, had the debtor been adequately counseled and advised concerning the type of petition to file by one properly trained and knowledgeable in the practice of law, the loss of the debtor's residence could have been effectively avoided.

Moreover, when a judgment requires the abstract understanding of legal principles and a refined skill for their concrete application, the exercise of legal judgments is necessary. *See Shortz*, 327 Pa. at 85, 193 A. at 21. Accordingly, we hold that the advice respondent renders concerning the exemption, dischargeability and automatic stay provisions of the Code, and their effect upon the determination of whether to file a petition under Chapter 7 or Chapter 13, is a highly sophisticated legal judgment requiring legal knowledge, training, skill, and ability far beyond those possessed by the average man. In other words, the services which respondent renders for a fee can only be performed by one qualified and trained in the practice of law and subject to the restrictions and regulations of the legal profession.

Our conclusion is further buttressed by the fact that respondent regularly prepares various legal documents for hire, including applications to pay filing fees in installments. In *Northampton County Bar Ass'n. v. Young*, 1 Monroe L.R. 94, 26 North 363 (1939), the court held that the habitual drafting of legal instruments for hire constitutes the practice of law, even though the individual so engaged makes no attempt to appear in court or to give the impression that he is entitled to do so. Respondent, Bradford Arthur, testified that as of March 18, 1981, he has prepared at least seventy-five (75) bankruptcy petitions [6] and he has drafted an undisclosed number of applications to pay filing fees in installments. Respondent further stated that he receives $160.00 for each petition prepared. Thus, respondent's *habitual or regular preparation* of legal documents for a fee further supports our conclusion that he is actively engaged in the unauthorized practice of law.

---

6. N.T. p. 2 (J. King), p. 7 (J. Goldhaber).

■ Respondent also solicits or advertises that he performs "legal services" through the use of newspaper ads and the distribution of business cards.[7] Respondent argues, however, that these advertisements do not constitute the solicitation to engage him to practice law, because the newspaper ads and the business cards do not affirmatively state that he is entitled to practice law. We agree that respondent's advertisements do not *affirmatively* state that he is a member of any bar or authorized to practice law in this jurisdiction. Yet, an advertisement need not affirmatively state that one is a member of the bar to run afoul of the statutory provisions prohibiting the unauthorized practice of law. *See* 42 Pa.Cons. Stat.Ann. §§ 2524–2525 (Purdon). All that need be shown is that the advertisement *implies* that a legal service can be performed. This view was enunciated in *Burch v. Mellor*, 43 D. & C. 597 (1942), where the court stated that it is a violation of Pa.Stat.Ann. tit. 17, § 1608–09 (Purdon) (repealed) for a layman, by advertisement to imply that he can perform legal services, even though he does not advertise affirmatively that he is entitled to practice law, or, in fact, practices it. The only logical conclusion which can be derived from respondent's advertisements in which he states that he performs "bankruptcy services", including the "clearing of debts" and the "protection of assets", is that these advertisements imply to the unknowing or unsuspecting layperson seeking such services, that respondent is qualified to perform them.

## CONCLUSIONS OF LAW

■ The advice and counseling respondent provides concerning the exemptions, dischargeability and automatic stay provisions of the Code constitutes the practice of law.

■ The advice and counseling respondent provides concerning the relative advantages of filing a petition for liquidation under Chapter 7, versus filing a petition for the rearrangement of debts under Chapter 13 of the Code constitutes the practice of law, because such advice requires the use of legal judgment requiring legal knowledge, training, skill, and ability beyond those possessed by the average layman.

■ The act of respondent engaging in the preparation of various legal documents, including applications to pay filing fees in installments, on a regular basis for a fee, constitutes the practice of law, even though respondent makes no attempt to appear in court or to give the impression that he is entitled to do so.

■ The act of respondent in soliciting clients constitutes a solicitation for the unauthorized practice of law, because these advertisements imply that he is qualified to perform legal services.

■ We must now consider the nature of the penalty to be imposed for the unauthorized practice of law. The practice of law by a person who is not a member of the bar is by statute a misdemeanor of the third degree in Pennsylvania. 42 Pa.Cons.Stat. Ann. § 2524 (Purdon). However, in most instances, the criminal remedy for the unauthorized practice of law is inadequate to protect the public from continuing unauthorized practice. This viewpoint is amply supported in Pennsylvania law. *See e. g., Dauphin*, 465 Pa. at 545, 351 A.2d at 229; *Shortz*, 327 Pa. at 81, 193 A. at 20. In other words, the fact that a criminal remedy is imposed by statute does not deprive a court of equity to *enjoin* ongoing unauthorized practice. *Shortz*, 327 Pa. at 81, 193 A. at 20; *Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883 (1934); *American Bar Foundation, Unauthorized Practice Handbook* 99 (J. Fischer & D. Lachman eds. 1972); Dobbs, *Remedies* 117 (1973); *Remedies Available to Combat the Unauthorized Practice of Law*, 62 Col.L. Rev. 501, 504 (1962). *See also, Everett v. Harron*, 380 Pa. 123, 110 A.2d 383 (1955); *Boggs v. Werner*, 372 Pa. 312, 94 A.2d 50 (1953).

---

**7.** N.T. p. 3 (J. Goldhaber). *See* exhibits 1 and 2.

Therefore, in accordance with the equity powers of this Court, respondent, Bradford Arthur, is hereby enjoined from engaging in the unauthorized practice of law before this Court. Further, because of the gravity of the present situation and the risk of further harm to the public, a Special Master will be appointed within ten (10) days of the issuance of this Memorandum and Order. Respondent is ordered to turnover to the Special Master all records indicating the bankruptcy petitions filed before this Court in which he has participated. After conducting his investigation and in accordance with the Order of this Court,[8] the Special Master will collect from respondent, Bradford Arthur, the total of all fees received by respondent for services rendered in conjunction with the unauthorized practice of law. The Special Master will, upon certification of his findings of fact to this Court, return all fees collected by respondent to the individual debtors.

---

**8.** The authority of this Court to appoint a Special Master and issue this Order can be found in Section 105 of the Code, which states in pertinent part:

(a) The bankruptcy court may issue *any order*, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a) (emphasis added).