In re Darain PINKINS, Walterine Jones, Charles & Shirley Daberkoe, Angela Hall, Pamela Fields, Maretta Roberson, Glenn Peeples, Rahman & Chantay Harmon, Sabrina Sanders, Phyllis Dunson, Tammy Trombley, Barbara Ellis, Darris Finney, D'Anyai Asaki, Luis & Denise Sierra, Lashawn & Angela Taylor, Theresa Singletary, Sandra Asberry, Ralph Knox, Leon Smith, Junotia Robertson, Debtors.

Bankruptcy Nos. 97–40722, 97–40965, 97–42032, 97–42576, 97–42719, 97–42790, 97–42791, 97–42885, 97–43062, 97–43162, 97–43353, 97–43356, 97–43414, 97–43419, 97–43494, 97–43661, 97–43664, 97–44060, 97–44160, 97–44241, 97–44564.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Oct. 14, 1997.

Julie Lesser, Royal Oak, MI, for Debtors.

David Wm. Ruskin, Southfield, MI, Trustee.

## MEMORANDUM OPINION

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on the Chapter 13 Trustee's objections to fee applications submitted by the Castle Law Office of Detroit, P.C. in 21 cases. The Court conducted a hearing on the objections on August 21, 1997. Because most of the objections relate to all of the fee applications, the Court will address them in one consolidated opinion.

### I. Introduction

The Castle Law Office ("Castle") handles primarily chapter 13 bankruptcy cases. The firm employs attorneys Julie Lesser and Terri Weik, and several legal assistants and clerical staff members. The Trustee's office considers Castle a "high volume filer," filing an average of 77 cases per month since January 1997. (Transcript of August 21, 1997 hearing (Tr.) at 36.) Castle's standard practice[1] in handling initial consultations with clients was that the client met with a legal assistant, who discussed with the client the available chapters and assisted the client in deciding which, if any, chapter proceedings the client should file. If the client had a question and requested an answer from an attorney, the legal assistant would personally ask the attorney and relate the answer back to the client. The client would not meet with

---

1. The Court is aware that the law firm has since modified some of its procedures. However, this Opinion addresses the procedures in effect at the time the fees in question were generated.

an attorney. The assistant gave a questionnaire to the client to fill out and return. The assistant then reviewed the questionnaire and prepared the papers to be filed. The client then returned to sign the papers, again meeting with a legal assistant, rather than an attorney. In most instances, unless the client had specifically requested to meet with an attorney, the client's first contact with the attorney was at the meeting of creditors.

The Trustee's primary fee objection is that the firm's clients did not meet with an attorney prior to the meeting of creditors. The Trustee's concern in this respect is that the legal assistant is giving legal advice and acting without direct supervision of an attorney. The Trustee also objects to the similarity of time entries on the fee applications and the lack of detail. The Trustee raises further objections in specific cases in which the fees charged exceed the agreed upon fees, and in cases which were dismissed at or before confirmation and Castle submitted an application for the full amount of the fees.

## II. Unauthorized Practice of Law

### A.

■ Michigan law governs whether Castle legal assistants engage in the unauthorized practice of law. *In re Bright,* 171 B.R. 799, 802 (Bankr.E.D.Mich.1994) (no federal law regulating the extent to which non-lawyers may appear before the bankruptcy court; Michigan law applies). Mich. Comp. Laws Anno. § 600.916 provides in pertinent part:

It is unlawful for any person to practice law, or to engage in the law business, or in any manner whatsoever to lead others to believe that he is authorized to practice law or to engage in the law business, or in any manner whatsoever to represent or designate himself as an attorney and counselor, attorney at law, or lawyer, unless the person so doing is regularly licensed and authorized to practice law in this state.

M.C.L.A. § 600.916; M.S.A. 27A.916.

■ The statute does not identify the activities that constitute the practice of law. Accordingly, "[t]he formidable task of constructing a definition of the practice of law has largely been left to the judiciary." *State Bar v. Cramer,* 399 Mich. 116, 132, 249 N.W.2d 1 (1976) (citing Comment, *Lay Di-*

*vorce Firms and the Unauthorized Practice of Law,* 6 J.L. Reform 423, 426 (1973)). The courts should construe the term with the purpose of the statute in mind, which is to protect the public. *Cramer,* 399 Mich. at 134, 249 N.W.2d 1.

In *Cramer,* the issue before the court was whether a nonlawyer selling "Do–It–Yourself Divorce Kits" was engaged in the unauthorized practice of law. The court held that it does not constitute the unauthorized practice of law for a nonlawyer to provide or sell standard forms and general instructions for completing the forms, or to provide typing services. *Cramer,* 399 Mich. at 136, 249 N.W.2d 1. However, the court stated, "[t]o the extent that defendant provides personal advice peculiar to [the client's particular legal situation], she is engaged in the 'unauthorized practice of law.'" *Id.* at 138, 249 N.W.2d 1.

In *Bright,* the bankruptcy court addressed whether the services provided by a paralegal constituted the unauthorized practice of law. The paralegal specialized in preparing divorce kits, but also assisted debtors in preparing chapter 7 bankruptcy forms. The practice of the paralegal in that respect was to collect data from the debtor, decide where information should be placed on the forms, and add language to the standard forms not dictated by the debtor. The paralegal also stated that she responded to questions from debtors regarding the interpretation and definition of terms, referred debtors to specific pages of reference books in response to questions and provided information about local procedures and requirements. She also consulted an attorney when a legal question arose and related the response back to the debtor. *Bright,* 171 B.R. at 800–01. The court noted that there had been no cases in Michigan specifically dealing with the unauthorized practice of law in the bankruptcy setting and looked to bankruptcy cases in other jurisdictions that have attempted to define what constitutes the unauthorized practice of law in the bankruptcy context. *Id.* at 802. Courts have held that the following activities constitute the practice of law in other jurisdictions:

(1) Determining when to file bankruptcy cases. *In re Herren,* 138 B.R. 989, 995 (Bankr.D.Wyo.1992).

(2) Deciding whether to file a Chapter 7 or a Chapter 13. *Arthur,* 15 B.R. at 54[6] [*In re Arthur,* 15 B.R. 541 (Bankr.E.D.Pa. 1981) ].

(3) Filling out or assisting debtors in completing forms or scheduled. *In re Glad,* 98 B.R. 976, 978 (9th Cir. BAP 1989); *In re McCarthy,* 149 B.R. 162, 166 (Bankr. S.D.Cal.1992); *Herren,* 138 B.R. at 993–4; *In re Webster,* 120 B.R. 111, 113 (Bankr. E.D.Wis.1990); *In re Bachmann,* 113 B.R. 769, 773–4 (Bankr.S.D.Fla.1990); *In re Calzadilla,* 151 B.R. 622, 625 (Bankr. S.D.Fla.1993).

(4) Solicitation of financial information and preparation of schedules. *Herren,* 138 B.R. at 994; *In re Grimes,* 115 B.R. 639, 643 (Bankr.D.S.D.1990).

(5) Providing clients with definitions of legal terms of art. *Herren,* 138 B.R. at 995.

(6) Advising debtors which exemptions they should claim. *McCarthy,* 149 B.R. at 166–7; *Herren,* 138 B.R. at 995; *Webster,* 120 B.R. at 113.

(7) Preparing motions and answers to motions. *McCarthy,* 149 B.R. at 166; *Webster,* 120 B.R. at 113.

(8) Advising debtors on dischargeability issues. *Arthur,* 15 B.R. at 54[6].

(9) Advising debtors concerning the automatic stay. *Arthur,* 15 B.R. at 54[6].

(10) Habitual drafting of legal instruments for hire. *Arthur,* 15 B.R. at 54[6].

(11) Correcting "errors" or omissions on bankruptcy forms. *In re Calzadilla,* 151 B.R. at 625.

(12) Advising clients as to various remedies and procedures available in the bankruptcy system. *In re Calzadilla,* 151 B.R. at 625.

*Bright,* 171 B.R. at 802–03.

■ This Court finds that the legal assistants of Castle perform many services that constitute the unauthorized practice of law. First, legal assistants explain to prospective clients the difference between chapter 7 and chapter 13. (Tr. at 15.) They are thus defining and explaining concepts and legal terms of art.

Second, Lesser stated that approximately 33% of prospective clients who come to their office for an initial consultation are given other suggestions as to how to resolve their problems without filing bankruptcy. (Tr. at 15.) Because these prospective clients meet only with a legal assistant at the initial consultation, the Court infers that the legal assistant makes the determination that bankruptcy is not the best choice for this particular individual and advises the client of other options. The rendering of advice peculiar to a client's particular situation is specifically prohibited by *Cramer,* 399 Mich. at 138, 249 N.W.2d 1.

Third, it appears that the assistant helps the client determine whether to file chapter 7 or chapter 13. Although Lesser testified that the client makes the choice (Tr. at 15), Lesser also later stated that the decision "by the client and the initial consultant" (Tr. at 16) is immediately reviewed by an attorney. Regardless of that review, the assistant's participation in this important decision constitutes the prohibited practice of law.

Fourth, if the legal assistant is not comfortable answering a specific question, or if the client is not comfortable with the advice given by the legal assistant, the legal assistant asks the attorney what the advice should be and relates that information back to the client. (Tr. at 17.) The primary concern with this practice is that the legal assistant uses his or her own judgment to decide which questions to refer to an attorney and which questions to attempt to answer themselves. There is also a chance that the assistant will not properly phrase the question to the attorney or will not communicate the advice properly to the client. Moreover, and most importantly, the client is entitled to the professional judgment of the attorney.

Lesser stressed that the legal assistants employed by the Castle law firm are very well trained, and that the legal services, although not provided by an attorney, are of the highest quality. (Tr. at 20.) This argument misses the point. Legal assistants are not authorized to practice law.

## B.

A number of the Michigan Rules of Professional Conduct provide further guidance on this issue. Michigan Rules of Professional Conduct 5.5 states in part:

A lawyer shall not:

* * * *

(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

The Comment to Rule 5.5 states, "[l]imiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons."

Michigan Rules of Professional Conduct 5.3—Responsibilities Regarding Nonlawyer Assistants—states in part:

With respect to a nonlawyer employed by, retained by, or associated with a lawyer:

(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; . . . .

The Comment to Rule 5.3 stresses that the "measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline."

Michigan Rules of Professional Conduct 1.1 states:

A lawyer shall provide competent representation to a client. A lawyer shall not:

(a) handle a legal matter which the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it;

(b) handle a legal matter without preparation adequate in the circumstances; or

(c) neglect a legal matter entrusted to the lawyer.

Michigan Rules of Professional Conduct 2.1 states:

In representing a client, a lawyer shall exercise independent professional judgment and shall render candid advice. In rendering advice, a lawyer may refer not only to the law, but to other considerations such as moral, economic, social and political factors that may be relevant to the client's situation.

The Comment to Rule 2.1 indicates that the "client is entitled to straightforward advice expressing the lawyer's honest assessment."

An issue similar to the one before the Court was addressed in State Bar of Michigan Ethics Opinion RI–128, April 21, 1992.[2] There, an attorney inquired as to whether his legal assistant could meet with a prospective client, collect information from the client, and forward the information to the attorney, at which point the attorney would prepare the required documents for signing without ever meeting with the client. The Standing Committee on Professional and Judicial Ethics examined the rules cited above and stated,

Taken as a whole, the recurrent theme found in these [ ] rules and comments is that a *lawyer's* expertise and judgment are an integral part of the service provided to a client. While legal assistants may behave in a very professional manner while interacting with clients and carrying out the multitude of other duties they perform on a regular basis, the fact of the matter is that a legal assistant has not received the extensive, in depth legal training which is required of a lawyer. Without such training, it is possible, perhaps even likely, that a legal assistant, having the only interaction with the client, may not spot an issue or issues that could make a difference in the drafting or representation provided.

RI–128. The Committee further stated that "it is impossible to see how the legal assistant, being the only contact with the law office, could refrain from giving legal advice.

---

**2.** Although ethics opinions are not binding on state or federal courts, they do provide guidance in resolving issues of professional responsibility.

*Upjohn Co. v. Aetna Cas. & Sur. Co.,* 768 F.Supp. 1186, 1214 (W.D.Mich.1990).

Certainly, any client will have questions regarding legal advice, and if the lawyer is not directly interacting with the client, any advice must be delivered through the legal assistant." RI–128.

■ Michigan Rules of Professional Conduct 1.4(b), which provides that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation," also infers that it is the *lawyer* who is communicating with the client. In most instances, clients of the Castle law firm did not meet with an attorney until the meeting of creditors. An attorney cannot adequately represent a client consistent with the Michigan Rules of Professional Conduct without meeting with the client before filing the case.

### C.

In *Bright*, the court stated that under the Michigan Rules of Professional Conduct, a lawyer is not adequately supervising a non-lawyer if:

(1) the lawyer does not know of the existence or content of meetings between the non-lawyer and the client;

(2) the lawyer relies solely on the non-lawyer as intermediary, neglecting to meet directly with the client; or

(3) the lawyer fails to use his independent professional judgment to determine which documents prepared by the non-lawyer should be communicated outside the law office.

*Bright*, 171 B.R. at 805.

■ Lesser stressed that an attorney reviews the file at every step. Specifically, after the initial consultation, an attorney reviews the initial consultation paperwork and determines if the appropriate chapter has been selected. (Tr. at 16.) The attorney reviews the petition and plan. The attorney selects the exemptions. (Tr. at 19.) After the client signs the petition, the attorney makes a final review of the papers and signs them. However, even if the attorney is as personally involved with the file as Lesser suggests, this does not obviate the need for direct client contact. Although it is not improper for attorneys to delegate certain matters to nonlawyer members of their staff, lack of contact or a direct relationship with

the client precludes proper delegation. *In re Stegemann*, 206 B.R. 176, 179 (Bankr.C.D.Ill. 1997).

■ A further problem arises from Castle's practice of having the legal assistant sign client retention letters. The agreement is purportedly entered into by the client and the attorney. However, the attorney does not sign the client retention letter. (See Ex. 1.) This issue was addressed by the Standing Committee on Professional and Judicial Ethics in Op 113. There, the lawyer was prohibited from allowing a nonlawyer employee to sign a client retention letter. The Committee reasoned that since court rules (MCR 2.114) require a lawyer to sign all pleadings, and retention letters are equally important, a nonlawyer may not handle retention letters. *See* Ethics and Legal Assistants, 71 Mich. B.J. 826 (August 1992).

### D.

■ Various sanctions are available in situations, such as this, involving the unauthorized practice of law. Courts have enjoined the unauthorized practice of law, disgorged fees, denied fees, fined the service provider, and ordered the service provider to pay the bankruptcy trustee's reasonable attorney fees. *See Bright*, 171 B.R. at 807 (citations omitted). The Court finds under the circumstances of these bankruptcy cases that it is appropriate to deny all fees for the work of legal assistants. The Court cannot award fees for unauthorized and unlawful services.

### III. Fees Charged in Excess of Fee Agreement

■ The Trustee raised objections in the following cases where the amount of the fee application was: greater than the agreed upon fees: Darain Pinkins, 97–40722; Tammy Trombley, 97–43353; Charles & Shirley Daberkoe, 97–42032; and Barbara Ellis, 97–43356. Lesser explained that the initial fee agreement covered only limited services and, in certain circumstances, additional services were required. The retainer agreement states that the $1,200 fee covers: 1) prefiling consultations, 2) creditor calls, 3) preparation and filing of original petition, 4) attorney representation at meeting of creditors, and 5) attorney representation at one confirmation

hearing. The retainer does not include attorney representation in any court action filed in conjunction with the petition, including adversary proceedings and motions. (See Ex. 1.) Following a review of the fee applications, the Court is satisfied that Castle has charged additional fees only in situations where services were provided that were not included in the initial fee agreement. Accordingly, this objection is overruled.

### IV. Fees for Dismissed Cases

 The Trustee objects to Castle charging the full fee in the following cases that were dismissed at or before confirmation: Walterine Jones, 97–40965; Angela Hall, 97–42576; D'Anyai Asaki, 97–43419; and Darain Pinkins, 97–40722. The Trustee questioned whether there was a benefit to the estate in light of the fact that the cases were dismissed. Lesser argued that the dismissals in question were the fault of the debtor and in such instances the law firm should be compensated for the services they provided.

Section 330(a)(3) provides that in determining the amount of reasonable compensation, all relevant factors are to be considered, including:

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title.

11 U.S.C. § 330(a)(3)(C).

The Trustee has focused on the subsequent dismissal of the case in his objection to these fees, without identifying any specific charges which he considers objectionable. Because the standard for determining reasonableness considers the fees "at the time at which the service was rendered," it is not appropriate to merely object to the total amount because the case was subsequently dismissed. Lesser argues that in each case in question, the dismissal was the result of actions of the debtor. If any actions by the attorney had contributed to the dismissal, then a reduction in fees would be warranted. However, the Court finds no indication of that in these cases and accordingly this objection is overruled.

### V. Services of Clerical Personnel

 Castle included in its fee applications expenses for the services of clerical personnel, including the following: Opening of file (file preparation/organization of paperwork, entering client into system); Court preparation for filing; Filing of petition; and Copying of plan/POS to creditors and Trustee. These charges should not be billed separately to clients, but should be included in office overhead. As noted by this Court in *In re Woodward East Project, Inc.*, 195 B.R. 372 (Bankr.E.D.Mich.1996), "it is the normal practice of attorneys in this district that the expenses of . . . clerical services are part of an attorney's office overhead, and are not billed separately to clients." *Id.* at 377; *see also In re Westwood Asphalt*, 45 B.R. 111 (Bankr.E.D.Mich.1984); *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr.D.Mass. 1991), aff'd, 142 B.R. 584 (D.Mass.1992). Accordingly, expenses for clerical services are not permitted and are disallowed.

### VI. Similarity of Time Entries and Insufficiency of Detail

The Trustee objected that each of the 21 fee applications stated the same amount of time for the same type of service. Lesser stated that the firm did not keep contemporaneous time records, and that the fee applications were reconstructed from memory and from reviewing the files. (Tr. at 22–23.)

The Trustee also objected to the lack of specificity of the time records. This lack of specificity necessarily resulted from Castle's initial failure to keep contemporaneous time records and the reconstruction of time records after the fact.

 The failure to maintain contemporaneous time records affects the reliability of the records, *In re Dawson*, 180 B.R. 478, 480 (Bankr.E.D.Tex.1994), and, although it does not automatically result in the denial of all fees, it does justify a reduction in the fees requested. *In re Evangeline Refining Co.*, 890 F.2d 1312, 1326–27 (5th Cir.1989). Without an opportunity to review actual time records, it is impossible for the Court to determine whether any particular time entry is reasonable.

 Additionally, the description of services provided in the reconstructed fee applications is lacking in detail, making it difficult for the Court to determine if the fees requested are reasonable. Local Bankruptcy

Rule 3.03(a)(12)(C) requires the time statement to "describe with particularity the services rendered." Entries such as "Signing Appointment 45 min." or "Phone call to client re: insurance 15 min." fail to adequately describe the services rendered. A fee application which sets forth with specificity the exact nature of the services rendered, the time expended, and the expenses incurred is a prerequisite to making a determination that the services were necessary and reasonable. *In re Meyer*, 185 B.R. 571, 574 (Bankr. W.D.Mo.1995). The Court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself." *In re Taylor*, 66 B.R. 390, 393 (Bankr.W.D.Pa.1986); *see also J.F. Wagner's Sons Co.*, 135 B.R. 264, 267 (Bankr.W.D.Ky. 1991). The Court finds that a twenty percent reduction in remaining fees is warranted due to Castle's failure to keep contemporaneous time records and resultant lack of detail in their reconstructed time records.

## VII. Conclusion

In summary, the Court denies all fees requested for the services of legal assistants and clerical personnel. The Court further reduces the remaining fees for the services of the attorneys by twenty percent. After those deductions, the allowable fees in each case are as follows:

| Case Name | Case Number | Amount Requested | Amount Allowed |
|---|---|---|---|
| Pinkins | 97–40722 | $1,500.00 | $863.32 |
| Jones | 97–40965 | $1,200.00 | $730.00 |
| Daberkoe | 97–42032 | $1,500.00 | $706.66 |
| Hall | 97–42576 | $1,200.00 | $550.00 |
| Fields | 97–42719 | $1,200.00 | $573.34 |
| Roberson | 97–42790 | $1,200.00 | $436.67 |
| Peeples | 97–42791 | $1,200.00 | $610.00 |
| Harmon | 97–42885 | $1,200.00 | $526.66 |
| Sanders | 97–43062 | $1,200.00 | $570.00 |
| Dunson | 97–43162 | $1,200.00 | $573.34 |
| Trombley | 97–43353 | $1,400.00 | $740.00 |
| Ellis | 97–43356 | $1,600.00 | $806.67 |
| Finney | 97–43414 | $1,200.00 | $516.00 |
| Asaki | 97–43419 | $1,200.00 | $580.00 |
| Sierra | 97–43494 | $1,200.00 | $563.34 |
| Taylor | 97–43661 | $1,200.00 | $566.67 |
| Singletary | 97–43664 | $1,200.00 | $490.00 |
| Asberry | 97–44060 | $1,200.00 | $493.33 |
| Knox | 97–44160 | $1,000.00 | $506.66 |
| Smith | 97–44241 | $1,200.00 | $616.66 |
| Robertson | 97–44564 | $1,200.00 | $466.66 |

An order regarding the allowed fees will be entered in each case.