In re Pecolia BASS, Danzerine Patterson, Derrick & Dawnette Purcell, Timothy Jackson, Sr., Jannette Hilton, Ricky & Linda Redrick, Charles Ramsey, Roberto Torre–Arroyo, Michael Peltier, Cherie Kirby, Robert & Marie Daugherty, Anthony & Tanya Early, Terry Terrell, Quintin Harper, Gerald Bowser, Ralph & Paula Ryan, Maggie Green, Melvin & Cynthia Kile, Emily Polk, Keith Underwood, Velma Lyons, Christopher & Julian Krajewski, Renee Bryson, Jace Jones, Jr., Veronica Phillips, Malcolm & Abrheasion Hill, Shanitha Rollins, Marian Lipsey, Thomas Daniels, Wendy Augustinus, June Dion, Kathy Little, Johnnie Keel, Mohamad & Sana Alfakir, Tina Eardmann, James & Contance Ross, Annette Malone, Jacquelyn Genus, Bryan & Stacy Slaughter, Bonita Miles, Dion & Deborah Earehart, John & Lois Norman, John Harris, Latasha Jackson, Thomas & Gloria Rose, Tammy Burgess, Bruce Parker, Eric & Juanita Nelson, Robert & Juanetta Jackson, Constance Moore, Lillie Edwards, Joe Swenson, Phillip Boyd Jr., Mike Cleghorn, Evelina Scott, Aaron & Sarah Brown, Teresa Collins, Janice Robinson, Dennis & Marie Prieur, Yvette Hughes–Canty, Mahalia Sims–Miller, Quenten Howard, Margaret Hamas, Darlene

Johnson, Rick Robertson, Theopa Thomas, Tina Lomax, Randy & Carolyn Williams, Gwendolyne Garnder, Vanessa Lewis, Anthony Martines, Belinda Moore, Annie Wilson, Rubin Martin, Charlie Smith, Shelly Kline, Jimmie Mellon, Frances Murray, John Mance, Robert Tarvin, Blanch Queen, Christina Knox, Darnell Smith, Dawn Schwartz, Jerome & Cathleen Boone, Matthew Beck, Robert Enners II, Deborah Pugh, Anthony Bell, Roxanne Elie, Harold & Bonnie Halsey, Dana Matthews, Lloyd Whitaker, Cardell Frierson, Queen Cohill, Lola Thompson, Augusta Davis, Selathia Johnson, Michele Funke, Frederick & Pamela Law, Debtors.

Bankruptcy Nos. 97–52772, 97–53605, 97–53786, 97–53600, 97–53709, 97–53970, 97–53603, 97–53784, 97–54083, 97–54086, 97–54254, 97–54461, 97–54150, 97–54347, 97–54513, 97–54241, 97–54459, 97–54519, 97–54521, 97–54684, 97–54888, 97–54594, 97–54804, 97–54891, 97–54600, 97–54814, 97–54896, 97–55047, 97–55362, 97–55530, 97–55119, 97–55364, 97–55640, 97–55277, 97–55424, 97–55853, 97–55854, 97–56034, 97–56047, 97–55957, 97–56038, 97–56104, 97–55961, 97–56041, 97–56107, 97–56110, 97–56211, 97–56341, 97–56430, 97–56472, 97–56561, 97–56563, 97–56779, 97–56852, 97–56947, 97–56951, 97–56953, 97–57274, 97–57284, 97–57290, 97–57462, 97–57463, 97–57465, 97–57613, 97–57616, 97–57727, 97–57797, 97–57882, 97–57885, 97–57886, 97–57943, 97–58063, 97–58191, 97–58337, 97–58420, 97–58517, 97–58519, 97–58721, 97–58725, 97–58789, 97–58932, 97–59067, 97–59135, 97–59281, 97–59285, 97–59290, 97–59291, 97–59391, 97–59398, 97–59400, 97–59550, 97–59551, 97–59613, 97–59683, 97–60025, 97–60038, 97–60436, 97–60534, 97–60587, 97–60729.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Oct. 30, 1998.

Julie Lesser, Royal Oak, MI, for Debtor.

David Wm. Ruskin, Southfield, MI, for Trustee.

### MEMORANDUM OPINION REGARDING TRUSTEE'S OBJECTION TO FEES

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on the Chapter 13 trustee's objection to the fee applications of the Castle Law Office filed in these cases. The trustee filed a blanket objection covering approximately 100 fee applications. The trustee also raised a separate objection relating to Castle's method of compensating legal assistants. Each objection is separately addressed below.

### I.

■ The trustee objects to the applications for failing to comply with L.B.R. 13.17(a)(5)(D) [1], which requires applications

---

1. Pursuant to the amendments to the local rules, effective October 1, 1998, this rule is now L.B.R. 2016–2(b)(4)(D) (E.D.M.).

to identify time spent performing services in increments of a tenth of an hour. The trustee asserts that the applications, which are in billing increments of a hundredth of an hour, are difficult to review.

■ The Court first notes that the purpose of requiring billing in increments of one-tenth of an hour is to more accurately reflect actual time spent on a particular task. Billing in increments of greater than one-tenth of an hour "inherently inflates and distorts the time actually expended, and hence is unacceptable." *In re Price,* 143 B.R. 190, 194 (Bankr.N.D.Ill.1992). Further, it also "suggests the opportunity for padding on short tasks." *In re St. Joseph's Hospital,* 102 B.R. 416, 418 (Bankr.E.D.Pa.1989).

With the purpose of the rule in mind, the Court must overrule the trustee's objection to Castle's practice of billing in increments of *less* than one-tenth of an hour. Castle's practice results in billing which more accurately reflects actual time than it would if billed in tenths of an hour. For example, a number of entries for leaving phone messages are recorded at .03, .05, and .08 hours. Following the trustee's argument, Castle would be required to bill a minimum of .10 hours for these calls, resulting in an increase in charges. This result is illogical and contrary to 11 U.S.C. § 330(a)(1), which permits the Court to award compensation for actual, necessary services. The trustee's objection on this basis is therefore overruled.

## II.

■ The trustee contends that the applications do not comply with the local rules because the proposed orders attached to the applications fail to state the amount of fees previously awarded, the amount of fees requested, or the amount of fees paid directly from the debtor.

L.B.R. 2.08(b)(4) [2] requires a motion to be accompanied by a copy of the proposed order, attached to the motion and labeled as Exhibit A. Castle will be instructed to comply with this requirement. However, the Court concludes that no reduction in fees is appropriate on account of this.

**2.** Now L.B.R. 9014–1(b)(4) (E.D.M.).

## III.

The trustee objects to charges for clerical functions under the categories of: calendar, corrections, type petition, correspondence and remind of appointment. The items for which Castle billed include: entering of information from questionnaires and notes into bankruptcy programs, preparation and printing of documents, docketing of dates, review of file, review of Trustee notices, verification of debtor addresses, and placing notices in file.

■ Clerical services should be included in office overhead and not billed separately to clients. *In re Woodward East Project, Inc.,* 195 B.R. 372 (Bankr.E.D.Mich.1996). The time entries to which the trustee objects were for services performed by legal assistants. In *In re Bank of New England Corp.,* 134 B.R. 450 (Bankr.D.Mass.1991), *aff'd,* 142 B.R. 584 (D.Mass.1992), the court stated:

> The Court accepts that paraprofessionals performing limited professional tasks can result in considerable savings in costs and efficiency in operations of estates. For that reason, hourly rates for such persons may be separately stated and compensated, subject to the same limitations as the fees of professionals. However, it should be noted that if the service performed by a paraprofessional consists of typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying, or mailing documents, the task is clerical in nature and not compensable. Such tasks are traditionally charged to overhead and included in the professional's hourly rate.

134 B.R. at 455 (citations omitted).

■ Castle argues that because the fees in question are attributable to a particular client, they should be billed to that client. However, the proper distinction should be between those tasks which are professional in nature and those which are clerical in nature. *Bank of New England,* 134 B.R. at 455. The fact that a fee can be attributed to

a particular client does not transform it into a professional fee or service.

The Court finds that the preparation of the schedules, preparation and printing of documents, and corrections to schedules are professional tasks that require the knowledge and expertise of the legal assistant and are thus compensable. The charges for phone calls to remind of appointment are also compensable, because in most instances, these phone calls entailed more than simply an appointment reminder. The legal assistant also answered questions for the client and reviewed information. Likewise, the Court finds reviewing trustee notices to be a compensable professional task.

However, verifying that the debtor's address is correct and placing notices and letters in the file are clerical tasks. The calendaring and docketing of dates are also clerical in nature and are not compensable. The trustee and Castle will be requested to attempt to agree on the appropriate reduction in fees for these charges.

## IV.

The trustee objects to the limited amount of time the attorney spends with the client and asserts that the majority of client contact is handled by the legal assistant. Castle states that it modified its practices in June of 1997 so that an attorney would meet with the client in every case prior to filing. Castle contends that it again modified its practices after this Court's October, 1997 opinion regarding the trustee's objections to Castle's fee applications, *In re Pinkins,* 213 B.R. 818 (Bankr.E.D.Mich.1997). Castle's current practice is for an attorney to meet with the client at the initial consultation.

In the majority of the fee applications currently before the Court, the initial consultation took place before this Court's opinion in *Pinkins,* and an attorney did not meet with the client until the signing appointment. In those circumstances, the Court finds that the legal assistants were engaged in the unauthorized practice of law. In *Pinkins,* the Court stated that "[a]lthough it is not improper for attorneys to delegate certain matters to nonlawyer members of their staff, lack of contact or a direct relationship with the client precludes proper delegation." *Id.* at 823 (citation omitted). It is therefore necessary for an attorney to meet with the client at the initial consultation, before delegating matters to nonlawyer staff members. It is not sufficient for the attorney to simply meet with the client at the signing appointment. Fees for the work of legal assistants in cases in which the attorney did not meet with the client until the signing appointment are therefore denied. *See id.* at 823.

In the more recent cases in which an attorney met with the client at the initial consultation, the legal assistant met with the client initially to gather the client's financial information. The attorney then met with the client and reviewed the client's paperwork, answered questions regarding bankruptcy, advised the client of duties under the Code, and discussed options under chapters 7, 11, 12, and 13. The attorney accomplished all of this in approximately 15–20 minutes. In most of these cases, the attorney did not meet with the client again until the meeting of creditors.

The trustee contends that the amount of time spent by the attorney with the client is insufficient. Castle responds that it is not the trustee's duty to attempt to dictate the amount of time the attorneys at Castle spend with their clients.

Considering the minimal contact that the attorney has with the client at the initial consultation and the fact that in most cases there is no further contact until the § 341 hearing, the Court must conclude that the overall quality of attorney services and representation is reduced and fees should be reduced accordingly. A further reduction in fees of 15% is therefore warranted.

## V.

The trustee objects to the duplication of services by the attorney and legal assistant at the signing appointments. In those cases where an attorney did attend the signing appointment, the fee applications indicate a meeting between the attorney, legal assis-

tant, and client for which both the attorney and the legal assistant bill separately.

 Generally, "no more than one attorney may charge the estate for interoffice conferences, meetings, and court appearances unless an adequate explanation is given." *In re GSB Liquidating Corp.*, 1995 WL 521528, *3 (Bankr.N.D.Ill. Aug. 21, 1995). However, in these cases, the Court finds that it is necessary and more cost effective for both the attorney and the legal assistant to be present at the signing appointments. Therefore, the fees for each will be allowed.

## VI.

 The trustee objects to the attorney time billed by Castle for the preparation of each of the fee applications because it exceeds 15% of the total fees requested.

 Absent exceptional circumstances, fees for the preparation of fee applications should be limited to 5% of the total fees requested. *In re Atwell*, 148 B.R. 483, 491–92 (Bankr.W.D.Ky.1993)(citing *Coulter v. State of Tenn.*, 805 F.2d 146 (6th Cir.1986). Castle's charges for the preparation of fee applications is clearly excessive and without justification. The fees shall be reduced to 5% of the allowable fees for each application.

## VII.

 Finally, the trustee contends that Castle's method of compensating its legal assistants constitutes improper fee sharing.

Castle states that it compensates its legal assistants based on the total number of weekly bankruptcy cases that Castle files.[3] Castle's payment scale, (Br. in Supp. of Trustee's Objections Ex. A), reveals that legal assistants conducting initial consultations receive a base salary of $375 per week for a minimum of 15 bankruptcy cases filed by Castle. Each additional bankruptcy filing, up to 39 filings, results in an increase in base salary of $25 per week. A $40 bonus is given for the 25th filing, with increases in the bonus in $10 increments up to the 39th filing. The result is that if Castle files 15 cases per week, the legal assistant receives a weekly salary of $375. Thirty-nine filings per week results in the maximum salary of $1,150.

The trustee objects to this method of compensation and argues that it constitutes improper fee sharing in violation of Michigan Rules of Professional Conduct 5.4(a). The trustee also asserts that Castle's method of compensating legal assistants encourages legal assistants to engage in the unauthorized practice of law.

Castle contends that the compensation arrangement constitutes profit-sharing, which is permitted under MRPC 5.4(a)(3). Further, Castle contends that the compensation arrangement does not interfere with the professional judgment of its lawyers and does not promote the solicitation of clients.

Michigan Rules of Professional Conduct 5.4 provides in part:

> (a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
>
> . . . .
>
> (3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

The Comment to Rule 5.4 states that the "limitations are to protect the lawyer's professional independence of judgment."

The issue of fee sharing was addressed in State Bar of Michigan Ethics Opinion RI–143[4], August 25, 1992. There, a law firm inquired as to whether it was improper to pay a legal assistant employee compensation based upon a set salary and a percentage of the net profits of the practice area in which the legal assistant was employed.

The Committee found that the compensation arrangement was permitted by Rule 5.4(a)(3), which allows a law firm to include

---

**3.** The trustee's account of Castle's compensation practices differs somewhat from Castle's description. This opinion addresses Castle's version of its compensation practices. It is not necessary for the Court to resolve the difference because under either version the practice is improper.

**4.** The "RI" designation indicates informal ethics opinions interpreting the Michigan Rules of Professional Conduct.

nonlawyer employees in compensation plans, even if the plan is based on a profit sharing arrangement. The Committee went on to state:

> In CI–478 we approved a lawyer's proposal to pay nonlawyer employees a set salary plus bonuses calculated on the lawyer's gross or adjusted gross income, provided that the bonus was not in any way tied to the employee's efforts to solicit clients for the firm.

RI–143.

The Committee further noted that "the result might be different if the compensation plan were based on the fees generated from a particular case or a particular client, rather than net profits of the law practice area of the firm." *Id.*

In *Trotter v. Nelson*, 684 N.E.2d 1150 (Ind. 1997), an attorney's former employee sued the attorney to enforce an agreement whereby the employee was to receive 5% of any fees which resulted from cases that the employee referred to the attorney. The employee asserted that the agreement was a permissible profit-sharing compensation plan allowed under Rule 5.4(a)(3).

The court stated that the sharing of fees provides an incentive for nonlawyers to recommend an attorney's services in furtherance of the nonlawyer's pecuniary interests, rather than the client's legal best interest. *Id.* at 1154. For that reason, the court held that a profit-sharing compensation plan cannot be tied to the receipt of a particular fee. *Id.* at 1155. A profit-sharing arrangement is permissible only if it "relates to the net profits and business performance of the firm, and not to the receipt of particular fees." *Id.* The court found the agreement at issue unenforceable because it was not "based upon a percentage of the overall profits of the law office, nor [was] it intended to provide an incentive and reward for input which led to the greater overall efficiency and productivity of the law office." *Id.*

In *In re Anonymous Member of the South Carolina Bar*, 295 S.C. 25, 367 S.E.2d 17 (S.C.1988), an attorney employed private investigators to investigate civil and criminal cases. In addition to an annual salary, the investigators received a bonus which was based on a percentage of the fees generated in a particular case on which the investigator had worked. *Id.* at 17. The attorney argued that the bonuses did not constitute fee splitting, but were compensatory payments designed to encourage the timely and effective processing of cases. The court noted that the "purpose of [the rule prohibiting fee splitting] is to discourage the unauthorized practice of law by lay persons and to prevent a non-lawyer from having a vested pecuniary interest in an attorney's disposition of a case that could possibly take preeminence over a client's best interest." *Id.* at 18. Because the investigators' bonuses were directly related to a percentage of the fees generated in the individual cases they investigated, the practice violated "the letter and the spirit" of the prohibition on fee splitting between lawyers and nonlawyers. *Id.*

Although Castle's compensation package for its legal assistants is not based on a percentage or share of fees received, it is directly tied to the filing of particular cases and is likely to encourage the solicitation of clients or the unauthorized practice of law, two activities the prohibition against fee sharing is designed to prevent. The legal assistants conducting initial consultations at Castle have a "vested pecuniary interest in [the] attorney's disposition of [the] case that could possibly take preeminence over [the] client's best interest." *South Carolina Bar*, 367 S.E.2d at 18.

Although, as Castle contends, the attorney and the client make the final decision as to whether to file a petition, the legal assistant, as the first personal contact the client has with Castle, collects the client's financial information and may be motivated to present the information in a way that would more likely lead to the filing of a petition. Further, compensating the legal assistant based on the number of petitions filed also encourages the legal assistant to attempt to influence the client's decisions.

For these reasons, the Court finds that Castle's practice of compensating its legal assistants based on the number of petitions filed is improper. However, for several reasons, the Court concludes that it is not

appropriate to reduce Castle's fees on this account. First, there were limited precedents addressing this somewhat confusing area of law, and it is apparent to the Court that Castle relied upon a good faith interpretation of those precedents. Second, the Court is confident that Castle will adjust its compensation practices as required by this opinion and that no reduction in fees is necessary to achieve that result or to "send a message." Third, the Court is unable to identify from the present record any connection between Castle's improper compensation practices and any of the factors that the Court must consider in determining a reasonable fee under 11 U.S.C. § 330(a). Accordingly, although the Court finds that Castle's present method of compensating its legal assistants is improper, its fees in these cases will not be reduced on this account.

## VIII.

In summary, the parties are requested to attempt to agree on an appropriate reduction in fees for those services which are clerical in nature. The fees for the services of the legal assistants in cases in which the attorney did not meet with the client until the signing appointment are denied. Fees shall be further reduced by 15% due to the inadequate time spent by the attorney with the client. The fees for the preparation of the fee applications are limited to 5% of the allowed fees. Further, Castle is advised to modify its method of compensating legal assistants so that it is not tied to the number of petitions Castle files.

The parties are requested to submit an appropriate order pursuant to L.B.R. 9021–1 (E.D.M.).