**In re Timothy Edwin WHEELER and Cynthia Carol Wheeler, Debtors.**

No. 10–54111.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Oct. 26, 2010.

Sonya N. Goll, Southfield, MI, for Debtors.

*Order Regarding Fee Application
of Debtors' Attorney*

STEVEN RHODES, Bankruptcy Judge.

■ The debtors' attorney has filed an application for approval of fees in the amount of $8,180.00, plus costs of $78.83, for a total of $8,258.83. The trustee has filed several objections. The fee application is to be determined under 11 U.S.C. § 330. Section 330 provides that, in determining the amount of reasonable compensation to be awarded to a professional person, "the court shall consider the na-

ture, the extent, and the value of such services, taking into account all relevant factors ..." 11 U.S.C. § 330(a)(3). In calculating the reasonable fees to be awarded under 11 U.S.C. § 330, this Court uses the lodestar method. *See In re Boddy*, 950 F.2d 334, 337 (6th Cir.1991). The lodestar amount is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id.*

The Court will review and rule on the trustee's objections, and then separately review whether the extraordinary fee sought is justified in the circumstances of the case. Based on all of those considerations, the Court will fix a fee that reflects its determination of a reasonable fee in this case.

■ The trustee objects to 3.0 hours of time spent for the meeting of creditors on the grounds that it is excessive. The Court is satisfied that this time was actually spent and is reasonable in the circumstances. Accordingly, this objection is overruled.

■ The trustee objects to time entries on March 15, 2010 (0.4 hours) and May 26, 2010 (0.3 hours) for attorney time spent reviewing the debtors' documents for the trustee after a paralegal had already reviewed them and billed for that time. The Court concludes that the requested times are excessive and that the requested fees should be disallowed.

■ The trustee objects to the time entry on March 23, 2010 (0.7 hours) as excessive to "Review file, pay stubs; prepare means test, continue draft schedule I with additional pay stubs" and an interoffice conference regarding a needed appraisal. The Court agrees that this time appears excessive and should be reduced.

■ The trustee objects to paralegal time entries on April 14, 2010 (0.2 hours), May 19, 2010 (1.0 hour), and May 26, 2010 (0.6 hours), on the basis that these are clerical services not compensable as professional services. Clerical services should not be billed separately to clients, but should be included in the office overhead. *In re Bass,* 227 B.R. 103, 107 (Bankr. E.D.Mich.1998). The entry on April 14 relates to the scheduling of an appointment and the Court agrees that this appears to be clerical in nature. The other entries relate to the debtors' compliance with Section 521 and appear to be compensable as paraprofessional services.

■ The trustee objects to attorney time entries on April 30, 2010 (0.1 hours) and June 4, 2010 (0.1 hours), on the basis that these are clerical services not compensable as professional services. These relate to calendaring dates and reviewing a notice of appearance. The Court agrees that these services are not compensable as legal services.

Finally, and most significantly, the trustee objects to time entries throughout the fee application for many emails to and from the debtors totalling $697.50, according to the trustee's calculation. The trustee observes that these entries are in addition to entries totalling $1,600.00 for office meetings with the debtors. The debtors' attorney responds that the debtors insisted on email communication. At the hearing on the application, counsel stated that she was unsure whether this form of communication was more or less efficient than more traditional forms of client communication. Counsel also was unsure whether creditors should be required to pay for this idiosyncrasy if it had resulted in less efficiency.

■ The Court notes that some of the entries for email communications do not state what the email communication related to. This makes it impossible to determine whether the time spent on the email was reasonable. Also, some of the entries are clearly for uncompensable clerical functions. The Court concludes that there is substantial merit in the trustee's objection.

In the Court's experience, this fee application is substantially higher than most chapter 13 fee applications. When asked how that came to be, counsel provided three reasons. First, an adversary proceeding was necessary to strip a second mortgage on the debtors' home. Second, there were several trustee and creditor objections to confirmation. Third, the debtors' insisted on email communication.

■ As to the adversary proceeding, the fee application reflects 3.8 hours of time. With all respect to counsel, that appears substantially excessive for an uncontested and uncomplicated adversary proceeding to strip a second lien. The Court also notes that because of the high volume of these, the practice of the bar in these adversary proceedings has become largely a form, fill-in-the-blanks practice.

■ As to the suggestion that objections to confirmation resulted in increased fees, this must be seen as a mixed response. While there is no doubt that the legal services relating to the confirmation objections as identified in the fee application were actually performed, it is less clear that these services were "necessary," as required under § 330 to be compensable. Certainly, services performed to correct a mistake in a plan that should not have been made in the first place, or that should have been corrected before the plan was filed, are not "necessary," at least not in the sense that they were needed to provide proper representation to the debtors at every stage in the proceeding. In the alternative, if it is concluded that the services to correct the mistake were neces-

sary, then it must also be concluded that the services undertaken to make the mistake were not "necessary." At the same time it must be conceded that not every confirmation objection results from a mistake in the plan; there are occasional good-faith disagreements over the propriety of plan provisions, and of course the events of the debtors' lives often result in objections to confirmation. After reviewing the papers in this case, however, the confirmation objections do not seem to have resulted from either of those two causes. Specifically, much time was spent on a legal question relating to the means test that had been resolved in prior cases years ago.

As to the assertion that the fee was higher due to the debtors' insistence on email communications, this seems to be a concession that it is less efficient after all. It is difficult, as counsel conceded, to find that such less efficient services are "necessary" under § 330, given that the creditors, and not the debtors, are actually the parties that pay for those services.

Finally, the Court must note the scope and scale of this chapter 13 case. The confirmed plan calls for total payments of $143,600.60 by the debtors. Of that amount, $108,708.00 is for mortgage payments; $2,000.00 is for an arrearage on the mortgage; $8,807.41 is for vehicle payments; and only $4,320.35 is for unsecured creditors (a 2% dividend). In the Court's experience, this should have been a relatively straightforward chapter 13 case, and certainly not one that would justify an extraordinary fee.

The Court concludes that the attorney fee should be fixed in the amount of $5,000.00. Costs of $78.83 are allowed in full.