Shortz et al. *v.* Farrell, Appellant.

Argued April 13, 1937.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ira Jewell Williams,* of *Brown & Williams,* with him *John M. Kelly* and *Francis D. Mahon,* for appellant.

*Frank P. Slattery,* with him *John A. Gallagher* and *Edwin Shortz, Jr.,* propria persona, for appellees.

*W. W. Montgomery, Jr.,* with him *Robert T. Mc-Cracken* and *Edward G. Taulane, Jr.,* for Pennsylvania Bar Association and Berks County Bar Association, interveners.

*Benjamin O. Frick,* filed a brief on behalf of American Mutual Alliance, amicus curiæ, under Rule 61.

*Evan C. Jones* and *White & Clapp,* filed a brief on behalf of Pennsylvania Manufacturers' Association Casualty Ins. Co., amicus curiæ, under Rule 61.

OPINION BY MR. JUSTICE STERN, June 25, 1937:

Plaintiffs, members of a Committee of the Wilkes-Barre Law and Library Association of the Luzerne County Bar, brought a bill in equity in the court below to enjoin defendant from the unauthorized practice of law. Defendant is not an attorney at law, but is employed as a claim adjuster for the Globe Indemnity Company, and prepares and files "pleadings" in workmen's compensation cases in which that company is a party defendant; he also, on its behalf, appears at hearings before the referees, examines and cross-examines witnesses, and there, in general, conducts the "litigation."

The chancellor, in a decree nisi, enjoined defendant "(a) from preparing and filing pleadings in Workmen's Compensation cases; (b) from examining and cross-examining witnesses in any proceeding before Compensation Referees and (c) from acting as counsel for any

party or insurance carrier in any proceeding before such Referees." The court in banc dismissed defendant's exceptions and entered a final decree, from which defendant appeals.

The Pennsylvania Bar Association, Philadelphia Bar Association, and the County Bar Associations of Allegheny, Berks, Dauphin, Erie, Fayette, Lackawanna, Lancaster, Lebanon, Northampton and York, have intervened as parties plaintiff. The American Mutual Alliance, which is an association of mutual insurance companies, and the Pennsylvania Manufacturers' Association Casualty Insurance Company, filed briefs under Rule 61.

The Act of April 28, 1899, P. L. 117, as amended by the Acts of April 17, 1913, P. L. 80, and April 24, 1933, P. L. 66, provides that "it shall not be lawful for any person, . . . in any county in the State of Pennsylvania, *to practice law,* . . . without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth in accordance with the regularly established rules governing such admissions: . . ."[1]

The question for decision is whether the activities of defendant, as above enumerated, constitute the practice of law.[2]

---

[1] The Act of July 12, 1935, P. L. 708, provides that "any person who shall practice law, within this Commonwealth, without being a member of the Bar of a Court of Record, shall be guilty of a misdemeanor, . . ."

[2] Section 16 of the Act of July 21, 1919, P. L. 1077, provides that the Workmen's Compensation Board shall "make all proper and necessary rules and regulations for the legal and judicial procedure of the bureau." The Board, however, has not adopted any provision bearing upon the present question other than as may be implied in the rule that "When any counsel, insurance carrier or representative of any party in interest shall have filed his appearance in writing the Referee shall serve all notices and other papers upon him and not upon the party whom he represents, and shall return the appearance as part of the record to the Bureau with his

There is no need for present purposes to venture upon a comprehensive survey of the boundaries—necessarily somewhat obscure—which limit the practice of law. An attempt to formulate a precise definition would be more likely to invite criticism than to achieve clarity. We know, however, that when a lawyer has, through patient years of study, acquired an understanding of the law and obtained a license to engage in its practice, he applies his knowledge in three principal domains of professional activity:

1. He instructs and advises clients in regard to the law, so that they may properly pursue their affairs and be informed as to their rights and obligations.

2. He prepares for clients documents requiring familiarity with legal principles beyond the ken of the ordinary layman,—for example, wills and such contracts as are not of a routine nature.[3]

3. He appears for clients before public tribunals to whom is committed the function of determining rights of life, liberty and property according to the law of the land, in order that he may assist the deciding official in the proper interpretation and enforcement of the law. Since, in order to determine such rights, it is necessary first to establish the pertinent facts, which are frequently uncertain, controverted, and best ascertainable,

---

award or disallowance of compensation." This does not amount to a permission to laymen to participate in the hearings before referees. The Act of June 4, 1937, P. L. 1552, section 437, provides that "Any claimant may appear in person or be represented by counsel learned in the law or he may be represented by a member of his duly recognized union or labor organization. Such labor representative shall be selected by said union or labor organization and duly approved by the department to practice before any referee or the Board." This act does not become effective until January 1, 1938, nor does it make any provision in regard to representation of defendants. We are not called upon in this case to determine whether the legislature has the power to permit laymen to practice law, or whether the grant of that right is exclusively a judicial prerogative.

[3] See *Childs v. Smeltzer*, 315 Pa. 9.

as experience has demonstrated, by the application of rules of evidence tested by centuries of usage, a lawyer, being technically fitted for the purpose, examines and cross-examines witnesses, and presents arguments to jurymen to guide them to a proper determination of the facts. As ancillary to participation in trials and in legal argumentation, he prepares pleadings and other documents incidental to the proceedings.

In considering the scope of the practice of law mere nomenclature is unimportant, as, for example, whether or not the tribunal is called a "court," or the controversy "litigation." Where the application of legal knowledge and technique is required, the activity constitutes such practice even if conducted before a so-called administrative board or commission. It is the character of the act and not the place where it is performed which is the decisive factor.

Is, then, a participation in hearings before workmen's compensation referees the practice of law? It would seem clearly to be included within the third field or category of a lawyer's functions as above formulated. We are not unmindful that the Workmen's Compensation Board has been denominated "an administrative tribunal, less formal than a court": *Johnston v. Payne-Yost Construction Co.,* 292 Pa. 509, 514; and that established rules and principles of common law practice are not to be rigorously applied in its proceedings: *Gairt v. Curry Coal Mining Co.,* 272 Pa. 494, 498; *Manley v. Lycoming Motors Corporation,* 83 Pa. Superior Ct. 173, 174; *Ratto v. Pennsylvania Coal Co.,* 102 Pa. Superior Ct. 242, 247; *Virtue v. Plummer,* 111 Pa. Superior Ct. 476, 478, 479. But even in compensation cases the material findings must have a basis of *legal proof* on which to rest: *Johnston v. Payne-Yost Construction Co.,* supra, pp. 514, 515. While neither the Board nor the referees are bound by technical rules of testimony, "all findings of fact shall be based only upon *competent evidence*": Act of June 26, 1919, P. L. 642, section 6, amending section 422 of

the Act of June 2, 1915, P. L. 736. Therefore, examination and cross-examination of witnesses require a knowledge of relevancy and materiality. It is true that section 417 of the Act of June 2, 1915, P. L. 736, as amended by section 6 of the Act of June 26, 1919, P. L. 642, permits the Board or a referee, of its or his own motion, either before, during, or after a hearing, to make an investigation of the facts set forth in the petition or answer, but this does not justify an award being based wholly or in part upon an ex parte investigation and unknown sources of information; whatever is thus ascertained must "be shown in the record and be open to challenge and opposing evidence. Facts conceivably known to the deputy commissioner [workmen's compensation referee], but not put in evidence so as to permit scrutiny and contest, will not support a compensation order": *Crowell v. Benson*, 285 U. S. 22, 48. The findings of fact made by a referee are final unless the Board grants a hearing de novo or a rehearing;[3a] the findings of fact made by the Board are final: section 6, (Art. IV, sec. 418) Act of June 26, 1919, P. L. 642; the Court cannot reverse such findings if there is any competent evidence to support them. The application of the Workmen's Compensation Act frequently involves delicate problems of law and fact. The Board considers legal questions, applies legal rules, and weighs facts in the light of legal principles. It has power to issue subpœnas, administer oaths, and require the attendance of witnesses and the production of books and documents: Acts of July 21, 1919, P. L. 1077, section 20; June 26, 1919, P. L. 642, section 6 (Art. IV, sec. 418). The proceedings, though less technical, are conducted much as

[3a] But by section 6 (Art. IV, sec. 423) of the Act of June 26, 1919, P. L. 642, the Board may substitute its own findings of fact for those of the referee, apparently even without a hearing de novo or rehearing. See *Vonot v. Hudson Coal Co.*, 285 Pa. 385; *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199; *Calderwood v. Consolidated Lumber & Supply Co.*, 91 Pa. Superior Ct. 189.

in court.   They are essentially of a judicial character.
Were they transferred to a court room and carried on
before a judge, it would be readily perceived that they
involve the same fundamental characteristics of the de-
termination of property rights and obligations of par-
ties as do other judicial proceedings.   Indeed, in Ala-
bama,[4] Alaska,[5] Louisiana,[6] New Hampshire,[7] New Mex-
ico,[8] Rhode Island,[9] Tennessee,[10] and Wyoming,[11] con-
troversies in compensation cases are adjudicated di-
rectly by the courts.   It is argued that because the ref-
erees and member of the Board are not required by our
Workmen's Compensation legislation to be learned in
the law, the qualifications of those appearing on behalf
of the parties should not be required to conform to a
higher standard than those of the presiding officials, but
in some measure the same contention would apply to the
exclusive province of lawyers to argue cases before ju-
ries of laymen.   The function of attorneys is to make
sure that only proper evidence is admitted, and logically
to marshal it for the consideration of the fact-finding
tribunal.

The Workmen's Compensation Board, its functions
and mode of operation, are not to be confused with those
of other so-called administrative bodies and agencies.
There is an ever-growing number of such boards and de-
partments of government which are legislative or execu-
tive in character rather than judicial.   Familiar exam-
ples are the Interstate Commerce Commission, the of-
fice of the Commissioner of Patents,[12] the United States

---

[4] Code 1923, § 7571.

[5] Comp. Laws 1933, § 2178.

[6] Gen. Stat. Dart, 1932, § 4408.

[7] Pub. Laws 1926, c. 178, § 25.

[8] Stat. Ann. 1929, chap. 156, § 113.

[9] Jan. Sess. 1928, Ch. 1207, § 4, p. 211.

[10] Ann. Code, Williams, 1934, § 6885.

[11] Sess. Laws 1933, p. 151.

[12] See 35 USCA, section 11.

Treasury Department,[13] the United States Board of Tax Appeals, Public Service Commissions, the Federal Trade Commission, the Securities and Exchange Commission, Minimum Wage Boards, and the like. To what extent, if any, lay representatives of applicants, claimants and petitioners, are, or should be, permitted to appear before such tribunals is not relevant to the present inquiry. It is sufficient to point out that the nature of the proceedings before the Workmen's Compensation Board differs essentially from that of most, if not all, of these other agencies. Of course every tribunal, however administrative in its functions, is occasionally called upon to consider a doubtful legal principle, while, on the other hand, even a judicial body frequently does nothing more than apply simple and uncontroverted legal rules to the facts. The difference lies largely in the frequency with which intricate legal problems arise in the performance of the duties imposed. The function of the Workmen's Compensation Board is to adjudicate property rights between private citizens, and the determination of the law applicable to the facts in the cases which it handles constitutes by no means a mere routine or automatic process. Moreover, from the beginning of the hearing before the referee a judicial record is made up upon which the ultimate rights of the parties depend, and in the proper development of that record legal knowledge and training are highly requisite.[14]

---

[13] See 5 USCA, section 261.

[14] In *Crowell v. Benson*, 285 U. S. 22, it was said, per Mr. Chief Justice HUGHES (p. 50): "As to determinations of fact, the distinction is at once apparent between cases of private right and those which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments. The Court referred to this distinction in *Murray's Lessee v. Hoboken Land and Improvement Co.,* [18 How. 272, 15 L. ed. 372], pointing out that 'there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but

It is defendant's contention that one of the objects of the Workmen's Compensation system was to achieve such simplicity in proceedings and administration that legal aid would not be required by the parties. This may be true to some extent, (and indeed such purpose is largely accomplished by the provisions of the Workmen's Compensation Act regarding amicable agreements of the parties as to the compensation payable, which render expert legal assistance unnecessary in the overwhelming majority of industrial accidents), but there is nothing to indicate that it is true as to controversial proceedings conducted before the referees or the Board. Indeed, the Act of June 2, 1915, P. L. 736, section 501, makes provision for the approval by the Board of agreements for legal services rendered in support of claims for compensation. Defendant calls attention to the statement in *Johnson v. Jeddo Highland Coal Company,* 99 Pa. Superior Ct. 94, 98, that "It was contemplated [by the Workmen's Compensation Act] that the injured employee might act without the employment of an attorney," and to the Act of March 21, 1806, P. L. 558, sec-

---

which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.' Thus the Congress, in exercising the powers confided to it, may establish 'legislative' courts (as distinguished from 'Constitutional courts in which the judicial power conferred by the Constitution can be deposited') which are to form part of the government of territories or of the District of Columbia, or to serve as special tribunals 'to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it.' . . . Familiar illustrations of administrative agencies created for the determination of such matters are found in connection with the exercise of the congressional power as to interstate and foreign commerce, taxation, immigration, the public lands, public health, the facilities of the post office, pensions and payments to veterans.

"The present case does not fall within the categories just described but is one of private right, that is, of the liability of one individual to another under the law as defined."

tion 9, which provides "That in all civil suits or proceedings in any court within this Commonwealth, every suitor and party concerned, shall have a right to be heard by himself and counsel, or either of them. . . ." Of course a claimant may, if he so desires, appear in workmen's compensation cases, as in all other judicial proceedings, without being represented by counsel. All that is here decided is that, if any person other than a member of the bar participates on behalf of another in hearings and proceedings before the Workmen's Compensation Board or one of the referees, such a representative is engaging in the practice of law and therefore comes under the ban of the Act of April 24, 1933, P. L. 66. In the case of a corporate party, such as the Globe Indemnity Company by whom defendant is employed, there can be no legal representation at all except by counsel, because a corporation cannot appear in propria persona: 1 Coke Litt. 66b; *Bennie v. Triangle Ranch Co.,* 73 Colo. 586; *Mullin-Johnson Co. v. Penn Mutual Life Ins. Co.,* 9 Fed. Supp. 175; *New Jersey Photo. Engraving Co. v. Schonert,* 95 N. J. Eq. 12, 122 Atl. 307; *Black & White Operating Co. v. Grosbart,* 107 N. J. L. 63, 151 Atl. 630; *Nixon, Ellison & Co. v. Southwestern Insurance Co.,* 47 Ill. 444; *Nispel v. Western Union R. R. Co.,* 64 Ill. 311; *Cary v. Satterlee,* 166 Minn. 507, 208 N. W. 408.[15] Were it otherwise, a corporation could employ any person, not learned in the law, to represent it in any or all judicial proceedings. Since defendant's activities before the compensation referees constituted the practice of law, it is immaterial that they were conducted on behalf of a corporation by which he was regularly employed.

---

[15] Apparently contra is *Sellent-Repent Corporation v. Queens Borough Gas & Elec. Co.,* 290 N. Y. Supp. 887, but this case was discussed at length, and its conclusions disapproved, in *Mortgage Commission v. Great Neck Improvement Co.,* Supreme Court of Nassau County, New York, decided April 1, 1937, reported in the New York Law Journal of April 2, 1937.

The few reported decisions on the question whether participation in hearings before Workmen's Compensation Boards or similar bodies constitutes the practice of law are uniformly in accord with the view here adopted: *Michigan State Bar Association v. McGregor,* 14 Mich. S.B.J. 145; *State Bar of Oklahoma v. Waldron,* District Court of Tulsa County, Okla., No. 60630; *Goodman v. Beall,* 130 Ohio St. 427, 200 N.E. 470;[16] *People ex rel. Chicago Bar Association v. Goodman,* 8 N. E. (2d) 941 (Ill.); *Clark v. Austin,* 101 S. W. (2d) 977 (Mo.).

While, in order to acquire the education necessary to gain admission to the bar and thereby become eligible to practice law, one is obliged to "scorn delights, and live laborious days," the object of the legislation forbidding practice to laymen is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure to the public adequate protection in the pursuit of justice, than which society knows no loftier aim. There is also another consideration to which it may not be amiss to refer. There has been such an enormous development in recent years of administrative and quasi judicial boards of all kinds,[17] that, unless

---

[16] In this case it was held that assisting a workman or his dependents in submitting a compensation claim is not the practice of law, but that one who appears before the Industrial Commission of Ohio in a representative capacity after the claimant has received notice of the disallowance of his claim is engaged in the practice of law. This is because, in Ohio, the proceedings are not controversial as far as the original taking of evidence and the grant of an award are concerned, but if the commission refuses an award and the claimant files a petition for rehearing, the proceedings thereafter are similar to those conducted in Pennsylvania on the original hearings before the referees, and constitute the record which is the basis of appeal from the Industrial Commission to the Court of Common Pleas.

[17] "More people, it is believed, are directly affected by the processes of administrative boards and quasi judicial tribunals than by

their proceedings and decisions are guided by persons learned in the history, development and philosophy of legal principles, the decline may be very rapid from government characterized by supremacy of law to one of haphazard and arbitrary rule,—a degeneration from liberty to oppression. Satisfaction in the existence of laws, however efficient and adequate they may be, is wholly illusory if they are not properly and wisely interpreted. Nor is the danger lessened in the present instance by the fact that an appeal lies from the Workmen's Compensation Board to the courts. The factual record is fixed in the proceedings before that tribunal and the rights and obligations of the parties are there so largely determined that the power of modification by the court is extremely limited.

In one respect the decree of the court below should be modified. It enjoins defendant from preparing and filing pleadings in workmen's compensation cases. Such "pleadings," however, are so uniformly simple that it cannot fairly be said that legal skill is required in their preparation. They are executed on forms prepared by the Board, are elementary in character, and do not rise to the dignity of pleadings as that term is understood in other judicial proceedings. Liberality in allowing their amendment is such as to render mistakes in connection with them innocuous. It is only when a hearing is begun before a referee that the representation of a party constitutes the practice of law.

The decree of the court below is modified by striking out clause (a), which enjoins and restrains defendant "from preparing and filing pleadings in Workmen's

adjudications of the courts. . . . This transfer of so much of the functioning of legal machinery to administrative boards is the vital fact of modern jurisprudence": Oppenheimer, The Supreme Court and Administrative Law, 37 Columbia Law Review, No. 1, pp. 1, 2.

Compensation cases." As thus modified the decree is affirmed. Costs to be paid by defendant.

Mr. Justice LINN dissents.