Richard A. COLE, M.D., Appellant,
(At 1388),

v.

Kirk PRICE, Appellee.

Richard A. Cole, M.D., Appellant,
(At 1389),

v.

Beverly Sackett and Gary Sackett,
her Husband, Appellees.

Richard A. Cole, M.D., Appellant,
(At 1390),

v.

Kathy Jean Colonna, Appellee.

Richard A. Cole, M.D., Appellant,
(At 1392),

v.

Betty Catalone, Appellee.

Richard A. Cole, M.D., Appellant,
(At 1398),

v.

Margaret Marther, Appellee.

Superior Court of Pennsylvania.

Submitted Dec. 1, 1999.
Filed Aug. 28, 2000.
Reargument Dismissed Sept. 14, 2000.

Richard A. Cole, appellant, pro se.

Richard J. Parks, Erie, for appellees.

Before CAVANAUGH, DEL SOLE, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, MUSMANNO, ORIE MELVIN and LALLY–GREEN, JJ.

POPOVICH, J.:

¶ 1 This case involves consolidated appeals filed by the plaintiff/appellant (Richard A. Cole, M.D.) challenging the orders of the Court of Common Pleas of Erie County granting motions to dismiss filed by the defendants/appellees (Colonna, Catalone, Price, Sackett and Marther) on the basis that the appellant's assignment of interest in the lawsuits did not obviate his status as the "real party in interest". We affirm in part and reverse in part.

■ ¶ 2 The unique scenario in each case requires recital to appreciate our disposition: *Richard A. Cole, M.D. v. Kathy Jean Colonna* and *Richard A. Cole, M.D. v. Betty Catalone* were commenced by counsel for the plaintiff with writs of summons naming "Richard A. Cole, M.D., Inc." the plaintiff. After counsel withdrew, Richard A. Cole, M.D. entered his appearance.[1] Complaints followed claiming monies were owed for alleged medical services rendered to the appellees. An "Assignment of Claims" was executed on June 6, 1996, transferring all of Dr. Cole's rights to collect these asserted debts to his brother/Steven for consideration in the form of financial aide and lodging totaling $30,000.00 in value.

¶ 3 The June 6th assignment was executed subsequent to the filing of the complaints in *Colonna* and *Catalone*, whereas the assignment preceded the filing of complaints in *Richard A. Cole, M.D. v. Price, Richard A. Cole, M.D. v. Beverly and*

---

1. We wish to respond to the appellee/Colonna's argument that allowance of the lawsuit against her by the appellant is improper because "Richard A. Cole, M.D., Inc.", as a corporate entity, was precluded from assigning its rights to "Richard A. Cole, M.D." by a document dated June 3, 1996. She claims the corporation was the "real party in interest", and, as such, had to be represented in court by a licensed practitioner and not Richard A. Cole, M.D. We disagree.

A corporation is a legal entity separate from its stockholders and is the legal owner of its property. P.L.E. Corporations § 113. As such, a business corporation has the legal capacity of natural persons to act. 15 Pa. C.S.A. § 1501. This translates into the power "[t]o sell, convey, ... exchange or otherwise dispose of all or any part of its property and assets, or any interest therein, wherever situated." *Id.* at § 1502(5).

The power of a corporation to enter into any obligation appropriate for the transaction of its affairs, including contracts or other agreements with its shareholders, *id.* at § 1502(17), we read to include the ability and right of "Richard A. Cole, M.D., Inc." to enter into an assignment of its rights to initiate and pursue any lawsuit for recoupment of monies due for alleged medical services performed by Richard A. Cole, M.D.

Nothing we have read in the statute or case law foreclosed the corporation's assignment of its rights to Richard A. Cole, M.D. to proceed pro se. Whether the appellant acted appropriately in representing the interests of his brother/assignee in court and what ramifications flow therefrom are separate issues addressed *infra*.

*Gary Sackett* and *Richard A. Cole, M.D. v. Margaret Marther*, the consequences of which will be discussed *infra*.

¶ 4 The temporal act of filing the complaints in *Colonna* and *Catalone* is crucial to determining their outcome. *See Cole v. Boyd*, 719 A.2d 311 (Pa.Super.1998), wherein the same plaintiff sued a former patient for medical services. We reversed in favor of the plaintiff because the assignment occurred after suit was commenced. This activated Pa.R.Civ.P. 2004, which permitted the continuation of the suit notwithstanding assignment. In doing so, we made the following relevant observations; to-wit:

> ... since the assignment was made after the suit was instituted, Pa.R.Civ.P. 2004 and not Rule 2002 (as relied upon by the trial court and the litigants) is controlling as to the party-plaintiff. *The MacKenzie Co. v. Fidelity & Deposit Co. of Md., et al.*, 54 Dauphin Cty. Rptrs. 294, 298 (1943). Rule 2004 reads:
>
>> If a plaintiff has commenced an action in his own name and thereafter transfers his interest therein, in whole or in part, the action may continue in the name of the original plaintiff, or upon petition of the original plaintiff or of the transferee or of any other party in interest in the action, the court may direct the transferee to be substituted as plaintiff or joined with the original plaintiff.
>
> The language of Rule 2004 is clear in not requiring that, once a transfer of an interest occurs by a plaintiff after an action has commenced, a transferee be named as a co-plaintiff or substituted as plaintiff. *Birdsboro Corp. v. Weng*, 426 Pa.Super. 301 [303–05], 626 A.2d 1216, 1217 (1993)(Substitution of parties, once suit has been commenced "is permissible, it is not essential [under Rule 2004]."); *The MacKenzie Co., supra*; 3 P.L.E. Assignments, § 92 at 206–207 ("Under this rule [2004], it is not mandatory for the assignee to be substituted as plaintiff or joined as co-plaintiff, and

the fact that the plaintiff and assignee choose to continue the action in the name of the original plaintiff cannot be construed as a fraud upon the court, nor does it render the proceeding defective or create an infirmity in the judgment." (Footnote omitted)); C.J.S. 6A Assignments, § 106 at 767 (*"Assignment after suit brought.* Where an assignment is made by plaintiff in an action after commencement of the suit, the assignee acquires the right to control the action, and his rights as assignee will be protected; and where authorized by statute, an assignee of an interest in a pending action has the option of being substituted in the action or continuing it in the name of his assignor." (Footnotes omitted)).

719 A.2d at 313–314.

¶ 5 In *Colonna* and *Catalone*, we have the added factor set in the "Motion to Dismiss" and on appeal that appellant's continued representation of his brother constitutes the unlawful practice of law. In evaluating the validity of such a claim, we are guided by certain precepts.

¶ 6 First, the power to regulate and define what constitutes the practice of law is vested in our Supreme Court. Pennsylvania Constitution, Article V, Section 10(c) provides as much:

> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts ... and for admission to the bar and to practice law....

To assist in the admission process, our Supreme Court has created testing procedures overseen by a Board of Law Examiners. Once admission is secured, the conduct of those privileged to engage in the practice of law is governed by a Code of Professional Conduct. Also, the requisite level of knowledge and skill to fulfill one's professional responsibility has resulted in the adoption of Rules of Continuing Legal Education. Together, these requirements

are intended to protect and secure the public's interest in competent legal representation. On this subject, Mr. Justice (later Chief Justice) Stern once observed:

> While, in order to acquire the education necessary to gain admission to the bar and thereby become eligible to practice law, one is obliged to 'scorn delights, and live laborious days,' the object of the legislation forbidding practice to laymen is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure to the public adequate protection in the pursuit of justice, than which society knows no loftier aim.

*Shortz v. Farrell*, 327 Pa. 81, 91, 193 A. 20, 24 (1937); *see also Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883 (1934); Note, *The Unauthorized Practice of Law by Laymen and by Lay Associates*, 54 Cal.L.Rev. 1331 (1966).

■ ¶ 7 Second, because the practice of law involves areas of public concern, the General Assembly has promulgated legislation to prevent the unauthorized practice of law; namely:

> ... any person ... who within this Commonwealth shall practice law ... without being an attorney at law ... commits a misdemeanor of the third degree....

42 Pa.C.S.A. § 2524(a)(Supp.1999). However, in most situations, the criminal remedy for the unauthorized practice of law is inadequate to protect the public from continuing unauthorized practice. *Dauphin Cty. Bar Ass'n v. Mazzacaro*, 465 Pa. 545, 351 A.2d 229 (1976); *Shortz*, 327 Pa. at 81, 193 A. at 20; *Matter of Arthur*, 15 Bankr. Rptr. 541, 545 (M.D.Pa.1981). In other words, the fact that a criminal remedy is imposed by statute does not deprive a court from enjoining the ongoing unauthorized practice of law. *Id.*

■ ¶ 8 Here, the appellant filed complaints alleging breach of an implied contract and unjust enrichment, pleadings opposing the respective "Motions to Dismiss" and briefs, preliminary objections to the defendants' Answer, New Matter and Counterclaim, and made repeated appearances in-court on behalf of Steven's interest as assignee of Cole's rights—a paradigmatic function of the attorney-at-law. As such, all of the above coalesce to form the "practice of law" in this jurisdiction. *Kohlman v. Western Pa. Hosp.*, 438 Pa.Super. 352, 358–60, 652 A.2d 849, 852 (1994), *allocatur denied*, 541 Pa. 640, 663 A.2d 692 (1995).

¶ 9 With the appellant's unabashed practice of law without a license, this Court is imbued with equity powers to proscribe his future in-court appearances on behalf of another by enjoining the appellant from such behavior forthwith. *Matter of Arthur, supra.* Of course, with the categorization of the assignment from the appellant to Steven as a valid transference of his rights to recoup monies alleged due for medical services if the principal assignee, Steven, wishes to proceed *pro se,* he may do so. *Kohlman, supra.* Therefore, on remand, Steven shall be availed the option to pursue the *Colonna* and *Catalone* cases as the named plaintiff. *See Cole v. Boyd, supra.*

■ ¶ 10 The appellant's efforts to neutralize this course of action by arguing the issuance of a rescission of the assignment and subrogation of rights is specious because the executory nature of the contract (with the advancement of money and lodging by Steven and the uncompleted act of repayment by the appellant) is not susceptible to rescission absent additional consideration. *See* 17A Am.Jur.2d § 554.

■ ¶ 11 Further, under Pennsylvania law, an assignment made for consideration is irrevocable. *Brager v. Blum*, 49 Bankr. Rptr. 626, 629 (E.D.Pa.1985). *Sub judice,* this constitutes the death knell for the appellant's efforts to proceed farther in

*Colonna* and *Catalone*.[2]  The same result obtains with regard to the remaining lawsuits, however the rationale is different.

¶ 12 To explicate, in *Price, Sackett* and *Marther* complaints were filed *after* the June 6, 1996, assignment transferring all of the appellant's rights to collect monies allegedly due from former patients.  As such, Pa.R.Civ.P. 2004's allowance of the lawsuits to continue, despite a change in the party-plaintiff, is rendered inapposite because the change/assignment preceded the initiation of the suits.

■ ¶ 13 Accordingly, with the invalidation of the parties' rescission of the assignment, the appellant's brother remains the "real party in interest" under Pa.R.Civ.P. 2002, which requires that he prosecute the *Price, Sackett* and *Marther* cases in his name and not that of the appellant.  On remand, Steven shall have the opportunity to substitute his name, if he so wishes, as the party-plaintiff in the *Price, Sackett* and *Marther* lawsuits.

¶ 14 In regard to *Colonna* and *Catalone*, the trial court's orders granting the Motion to Dismiss with prejudice are reversed.  On remand, with the appellant precluded from the unauthorized practice of law, the brother/Steven/assignee shall have the option to substitute himself as the party-plaintiff pursuant to Rule 2004 to avoid a demise of these lawsuits.  *Cole v. Boyd, supra.*

¶ 15 In contrast, the orders granting the Motion to Dismiss in *Price, Sackett* and *Marther* are affirmed.  This is so because the appellant's assignment preceded the complaints, which sequence renders Rule 2004's allowance of lawsuits to continue where a transfer in interest takes place inapposite.  However, because the assignment was viable to transfer Dr. Cole's rights to his brother Steven, the "real party in interest" need only substitute his name as party-plaintiff in *Price, Sackett*

and *Marther* to continue these suits, subject to whatever statute of limitations issues which might be presented.

¶ 16 Orders affirmed in part and reversed in part.

¶ 17 DEL SOLE, J. files a Concurring and Dissenting Statement in which LALLY–GREEN, J. joins.

¶ 18 ORIE MELVIN, J. files a Concurring and Dissenting Statement in which DEL SOLE, J. and LALLY–GREEN, J. join.

DEL SOLE, J., concurring and dissenting:

¶ 1 I join the Concurring and Dissenting Statement by Judge Orie Melvin.  However, I find it appropriate to express my view that, unlike the Majority, I believe parties can rescind an assignment.  I conclude that the prohibition against rescinding an assignment applies only to attempted unilateral revocation.

¶ 2 Where the assignor and assignee agree to a revocation, absent prejudice to the obligor, they should be free to act.

¶ 3 LALLY–GREEN, J. joins in this Concurring and Dissenting Statement.

ORIE MELVIN, J., concurring and dissenting:

¶ 1 While I concur in the result of the majority's resolution of the *Colonna* and *Catalone* appeals, I dissent as to the majority's resolution of the *Price, Sackett* and *Marther* appeals.  I disagree with the majority's conclusion that Appellant was not the real party in interest.  The documents entitled "ASSIGNMENT OF CLAIMS" and "SUBROGATION AGREEMENT" when read together, evidence a clear intent to merely provide Steven P. Cole with security for the repayment of his

---

**2.** To the extent that the trial court predicated the grant of the Motions to Dismiss on the absence of consideration to justify the rescission of the executory nature of the assignment is of no moment because we may affirm the ruling of the court below for any reason consistent with established statutory and/or case law.

$30,000.00 loan. The form of security contemplated was the proceeds or judgments flowing from the success of the suits Dr. Cole had already instituted or would institute against his former patients. The brothers never intended for Steven to succeed to the right to prosecute the actions for unpaid medical services. Such an agreement would be nonsensical, as Dr. Cole would be a necessary witness in any such action. This arrangement appears to be more like a pledge of the doctor's accounts receivable to secure repayment of a loan. Under these circumstances there is no assignment of a cause of action. The fact the drafter of these documents was not skilled in the use of the proper legal terminology should not be held against him, especially in light of the familial relationship of the parties and the fact the court is not being asked to enforce the brothers' agreement. Viewed in this light, this is not a true real party in interest controversy.

¶ 2 We should keep in mind the purpose of the real party in interest rule is to prevent a fraud upon the court. An examination of the record does not reveal any attempt by the plaintiff to commit a fraud upon the court or to deceive the defendants as to who is behind the suit. Moreover, a judgment in favor of Dr. Cole will not subject these defendants to further suits regarding the same claims prosecuted in the name of Steven Cole. Our substantive law would provide protection from any such attempt. This Court should not engage in a hypertechnical interpretation of certain terms used in these documents to deny the plaintiff his day in court. In doing so the majority elevates form over substance. We should not blindly apply a procedural rule where the substantive law provides sufficient guidance for analyzing whether the proper party has brought the action.

¶ 3 The majority decision does not further the goal of judicial economy. Provided the statute of limitations on these claims have not run, Steven Cole need only grant Dr. Cole his power of attorney to reinstate and prosecute these claims. However in the more likely event the statute has run, I would find, under the circumstances of this case, Dr. Cole is the real party in interest here in a suit seeking to recover unpaid fees for medical services rendered by him. Although Steven Cole has a beneficial interest in the cause of action and may, ultimately, be entitled to any recovery obtained, the defendants remain subject to the satisfaction of but one judgment. The facts of this case simply do not constitute sufficient justification for the trial court's grant of the defendants' Motion to Dismiss with prejudice. At most the trial court should have ordered substitution of Steven Cole as plaintiff or joinder as a co-plaintiff.

¶ 4 Accordingly, I disagree with the Majority's resolution of the *Price, Sackett* and *Marther* appeals. I concur in the result of the majority's resolution of the *Colonna* and *Catalone* appeals.

¶ 5 DEL SOLE, J. and LALLY-GREEN, J. join in this Concurring and Dissenting Statement.