J-A23016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ARNOLD STEINBERG, | |
| Appellant | No. 1761 WDA 2012 |

Appeal from the Judgment of Sentence entered October 24, 2012,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0013930-2011

BEFORE:  DONOHUE, ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 26, 2014**

Arnold Steinberg ("Appellant") appeals *pro se* from the judgment of sentence entered after a jury convicted him of two counts of the unauthorized practice of law ("UPL").[1]  We affirm.

The trial court summarized the pertinent facts supporting Appellant's convictions as follows:

> The [Commonwealth] charged Appellant with [the] unauthorized practice of law.  There were two separate accusations of criminality:  the first involved [Appellant's] resolution of a personal injury matter for Marcie Caliguire; the second involved [Appellant's] representation of Mr. and Mrs. Batis in a financial securities matter.  In both instances, the [Commonwealth] accused [Appellant] of practicing law after he was disbarred [by consent] on [January 29,] 2009.  The [Commonwealth] presented evidence from Ms. Caliguire, her father, John, opposing

---

[1] 42 Pa.C.S.A. § 2524.

counsel in the securities matter, Mrs. Batis[,] and an investigator from the District Attorney's office. The defense consisted of [Appellant's] testimony and some exhibits.

*Personal Injury – Caliguire Matter*

Marci Caliguire was in an automobile accident in North Carolina in September, 2007. She talked with her father about it and he recommended she call [Appellant]. She followed her dad's advice. She spoke with [Appellant] and the attorney-client privilege was formed. He told her "he could help her out," and that "he would get in touch with the insurance company." In November, 2009, [Appellant] sent a form letter to Ms. Caliguire. The topic was the settlement of her personal injury case. [Appellant's] statement to her was as follows:

> "We were able to settle your case for $5,000.00 and the check and Release are on the way to my office. We could not get more because of notations in the records that you had other vehicular accidents and that you had told the doctors that you had basically recovered. Based upon everything, this is far better than having to retain North Carolina counsel to file an action that would be a major distraction to you in the forms of depositions, hearings, independent medical exams, etc. Please sign and return it to me."

The date of this communication from [Appellant] was November 10, 2009. The date of his disbarment was 9 months *earlier* – [on] January 29, 2009. At no time did [Appellant] inform Ms. Caliguire that he was no longer a lawyer, as was required by the [Commonwealth's] other evidence.

\*\*\*

*Financial Securities – Batis Matter*

Through hard work, Carol and Nicholas Batis ("Batis") accumulated some assets through their 37 years of marriage. They chose to invest this money. They gave their money to a brokerage firm, Stifel Nicholaus. Sometime in 2008, Batis wanted to sell some of their stock

- 2 -

in response to the market correction the United States was experiencing. Their contact person, Mr. Phillip Kontul, could not be found. "He was sick. He was dying." As a result, their stock was not sold as quick as they would have liked. They lost money. Batis estimated it to be about $95,000.

This was not the first time Batis experienced such an event. Around 2001, Batis suffered more substantial losses – around $250,000. Batis pursued the matter in an arbitration forum. In 2003, the arbitration panel ruled in Batis' favor. The lawyer representing Batis was [Appellant].

With this history of success, Batis reached out to [Appellant] to help them with the more recent matter. In August, 2008, Batis entered into a contract with [Appellant]. [Appellant] agreed to act as their attorney to "[p]rosecute the Client's claim for damages. [A fair inference can be drawn that Appellant was paid the $1,000 called for in the agreement to start his representation.] [Appellant] filed a Statement of Claim on behalf of Batis. This document details the particulars of the claim. A hearing date was set for late October, 2009.

About a month before the hearing, [Appellant] communicated an offer he received to settle the case. The offer was $30,000. His advice was that Batis should "go all the way and go for more, go for what we're asking for" the entire 95-thousand. Influenced by [Appellant's] prior success, the offer was rejected by Batis.

A few days before the hearing, [Appellant] and Batis [met] in his office to prepare. The meeting also included the presence of expert witnesses. [Appellant] told Batis they were needed. Batis accepted the advice. The hearing was held. The Batis' [sic] won. But only $3,000. This was far different than the $95,000 Batis calculated and significantly less than the $30,000 that was negotiated by [Appellant].

At home that evening, Batis began to do some research. [They] learned [Appellant] was disbarred. Batis was never told by [Appellant] that he was disbarred. They never received a letter from him saying he was disbarred. His date of disbarment was January 29, 2009.

- 3 -

Trial Court Opinion, 8/5/13, 3-6 (citations to notes of testimony, exhibits and footnotes omitted).

In his defense, Appellant testified and, as to both matters, asserted that the clients suffered no harm. In addition, Appellant claimed that what he did for them following his disbarment did not constitute the "practice of law." In an apparent rejection of Appellant's characterization of his actions, the jury convicted Appellant of two counts of the unauthorized practice of law. On October 24, 2012, the trial court sentenced Appellant to an aggregate term of eighteen months of probation, as well as restitution and court costs. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

> 1. Whether the Unauthorized Practice of Law statute ["UPL statute"] is unconstitutional?
>
> 2. Whether the cumulative effect of the numerous errors and instances of prejudice committed by the Trial [Court], served to deprive [Appellant] of a fair trial?
>
> 3. Whether the acts of which [Appellant] was accused were *de minimus* to the point where the Trial Court should have dismissed the charges brought against [Appellant]?
>
> 4. Whether the Trial Court erred in refusing to include the Proposed Jury Instructions of [Appellant] as part of its Charge to the Jury?

Appellant's Brief at 3.

Before addressing these issues, we note that Appellant's brief fails to comply with Pa.R.A.P. 2116(a), in that each of the above issues are not

supported by a separate delineated argument section. This has rendered review of Appellant's claims difficult. In addition, for various reasons, the Commonwealth contends that all of Appellant's issues are waived.

Citing Pa.R.A.P. 302(a), the Commonwealth first contends that Appellant has failed to preserve certain issues based on Appellant's failure to raise the issues with the trial court, and notes that Appellant cannot rectify his error by raising the issues for the first time in his Pa.R.A.P. 1925(b) statement. Commonwealth's Brief at 6-7 (*quoting* **Commonwealth v. Kohan**, 825 A.2d 702, 706 (Pa. Super. 2003)). Additionally, the Commonwealth asserts that any issue raised by Appellant that did not appear in his Rule 1925(b) statement is waived. Pa.R.A.P. 1925(b)(4)(vii). Finally, the Commonwealth supports its waiver argument by averring that all of Appellant's issues have been "deficiently presented[.]" Commonwealth's Brief at 7. According to the Commonwealth, Appellant's issues are waived either because Appellant does cite to the record or relevant legal authority, **Commonwealth v. Berry**, 877 A.2d 479, 485 (Pa. Super. 2005), or has inadequately developed his claim for relief. **See generally**, **Commonwealth v. Spotz**, 18 A.3d 244 (Pa. 2011). The trial court has also found waiver with regard to several issues. *See* Trial Court Opinion, 8/5/13. We will address waiver relative to each issue raised by Appellant.

Appellant first mounts a constitutional challenge to the UPL statute. The pertinent statutory section reads as follows:

### § 2524.  Penalty for unauthorized practice of law

- 5 -

> **(a) General rule.**—Except as provided in subsection (b) [(relating to practice by associations)], any person, including but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree upon a first violation. A second or subsequent violation of this subsection constitutes a misdemeanor of the first degree.

42 Pa.C.S.A. § 2524(a).

In support of his constitutional challenge, Appellant asserts that Section 2524(a) "is so vague that [he] was not sure of what he was or was not allowed to do." Appellant's Brief at 13. According to Appellant, the UPL statute neither defines the "unauthorized practice of law" nor distinguishes prohibited conduct by "formerly-admitted attorneys versus people who had never been licensed to practice law." *Id.* at 14 n.10. Thus, Appellant submits that the UPL statute "is both unconstitutionally vague and overbroad." *Id.* at 14-15.

As to his specific charges, Appellant additionally argues that in the securities matter, he "was relying upon a letter received from the FINRA Director of Arbitration [and] he was acting without any intent to violate the applicable UPL statute." *Id.* at 13. As to the Caliguire matter, his actions in "trying to simply compete a settlement by sending a letter out of state that

- 6 -

accidentally had the wrong letterhead, . . . would also appear to not violate the UPL statute." Appellant's Brief at 13 (footnote omitted).

In its Pa.R.A.P. 1925(a) opinion, the trial court asserts that Appellant's failure to raise his "overbreadth" challenge with the requisite specificity in his Pa.R.A.P. 1925(b) statement resulted in waiver of his claim. Our review of the statement supports the trial court's conclusion. **See generally**, **Commonwealth v. Hansley**, 24 A.3d 410 (Pa. Super. 2011). Nonetheless, we recognize: "[A] statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." **Commonwealth v. Cotto**, 753 A.2d 217, 219 (Pa. 2000) (citation omitted). "Therefore, the party challenging the constitutionality of a statute has a heavy burden of persuasion." **Id.** "All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." **Commonwealth v. Waddell**, 61 A.3d, 198, 202 (Pa. Super. 2012).

With regard to a claim that a statute is "void for vagueness," our Supreme Court has summarized:

> A statute is constitutionally void if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. However, a statute will not be deemed unconstitutionally vague if the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory applications.

***Cotto***, 753 A.2d at 220 (citations omitted).

The trial court dismissed Appellant's constitutional challenge, reasoning as follows:

> Our state Supreme Court has dealt with this broad issue before. "Under the void-for-vagueness standard, a statute will only be found unconstitutional if the state is 'so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" ***Commonwealth v. Davidson***, 938 A.2d 198, 207 (Pa. 2007) (citations omitted). However, a statute will pass a vagueness constitutional challenge if the statute ["]define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.["] ***Id.***, (citations omitted). Due process requires that a criminal statute give fair warning of the conduct it criminalizes. ***Id.*** (citation omitted). "Furthermore, even if the General Assembly could have chosen 'clearer and more precise language' equally capable of achieving the end which is sought does not mean that the statute which it in fact drafted is unconstitutionally vague." ***Id.***, at 207-208 (citations omitted).
>
> [Appellant's] complaint about the [UPL] statute is that it does not define that very phrase—unauthorized practice of law. In [Appellant's] eyes, the lack of definition leads him and many others to wonder what is acceptable conduct and what is criminal conduct.
>
> Our state Supreme Court "has not attempted to provide a comprehensive statement of what activities comprise the practice of law, nor have we believed it wise or necessary to engage in the task of defining what the practice of law means for all purposes." ***Office of Disciplinary Counsel v. Marcone***, 855 A.2d 654, 660 (Pa. 2004), *citing* the leading case on the topic, ***Shortz v. Farrell***, 193 A. 20 (Pa. 1937) (attempt to formulate a precise definition of the practice of law would be more likely to invite criticism than to achieve clarity). "Thus, as a general proposition, we have explained what specific activities constitute the

practice of law on a case-by-case basis." ***Id.*** While our focus is on the underlying facts [in this case], the 76 year old ***Shortz*** decision touched upon 3 broad categories of activity that would constitute the practice of law[:]

(1) the instruction and advising clients in regards to the law so that they may pursue their affairs and be informed as to their rights and obligations;

(2) the preparation of documents for clients requiring familiarity with legal principles beyond the ken of ordinary laypersons; and

(3) the appearance on behalf of clients before public tribunals in order that the attorney may assist the deciding official in the proper interpretation and enforcement of law.

***Shortz***, 193 A. at 21.

[Appellant's] conduct in both instances violated the parameters established by ***Shortz***. As for the personal injury matter, [Appellant] advised Ms. Caliguire that the $5,000 settlement was the best that could be obtained. He reached that conclusion based upon his years of experience and knowing the likelihood of success if that monetary resolution was rejected. He also instructed Ms. Caliguire about the practical problems associated with an accident which happened in another state. Ms. Caliguire relied upon that advice. For the Batis matter, [Appellant] prepared a statement of claim. He used his experience to filter what pertinent facts needed to be included. He appeared in the arbitration matter and was the leader of the Batis team. His team members included expert witnesses which [Appellant] prepared for their presentation. At the end of the day, the Court does not see that a person of ordinary intelligence would continue to do tasks a lawyer normally does after being told you are no longer a lawyer.

\*\*\*

The present facts just do not allow [Appellant] to overcome [the presumption of constitutionality].

Trial Court Opinion, 8/5/13, at 9-11.

Our review of the record supports the trial court's conclusion that Appellant failed to meet his burden of establishing that the UPL statute is unconstitutionally vague. Appellant's supporting arguments, which are largely based on matters outside the record and therefore irrelevant, are inapposite. Thus, Appellant's constitutional challenge fails.

In his second issue, Appellant asserts that "the cumulative effect of the numerous errors and instances of prejudice committed" by the trial court "served to deprive [him] of a fair trial." Appellant's Brief at 3. In support of this issue, Appellant argues specific instances under seven subheadings, which subsume his remaining issues. Although we will treat Appellant's remaining issues separately, we address Appellant's remaining "subheadings" together.

The subheadings raised by Appellant largely concern the conduct and statements by the trial court, which allegedly demonstrates the trial court's predisposition against Appellant, and demonstrates why the trial court should have granted Appellant's mid-trial motion for recusal. *See* N.T., 9/4 –6/12, at 239. In each of these subheadings Appellant either lists out-of-context statements made by the trial court, lists "[b]latant instances of prejudice and error" by the trial court, or refers to "a plethora of other errors and instances of overt prejudice" which deprived him of a fair trial. *See* Appellant's Brief at 24-30. Appellant does not reference any pertinent authority to support his claims. Because Appellant has not adequately

developed any of these claims, we find them waived, and will not consider them further. ***Spotz***, ***supra***.

To the extent that Appellant provides these "lists" to demonstrate that the trial court should have granted Appellant's recusal motion, our Supreme Court has explained:

> If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This assessment is a personal and unreviewable decision that only the jurist can make. Once the decision is made, it is final.
>
> This Court presumes judges of the Commonwealth are honorable, fair and competent, and when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden or producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

***Commonwealth v. Druce***, 848 A.2d 104, 108 (Pa. 2004) (citations omitted).

The trial court explained the context of the recusal motion, and its reasons for denying it, as follows:

> When the Commonwealth ended their evidentiary presentation, the parties conferred with the Court. During this discussion, [Appellant] asked that the case be dismissed. Soon thereafter, [Appellant] moved to recuse this jurist from further participation. After giving

[Appellant] the opportunity to argue, the motion was denied.

\*\*\*

[***Druce***, ***supra***] requires [Appellant] produce evidence "establishing bias, prejudice or unfairness." This he cannot do. His oral argument at the time of his motion mimics what is contained in his [Amended Pa.R.A.P. 1925(b) Statement]—that is—the Court believed him to be guilty and that belief influenced its decision making. The Court does not run from its thought that [Appellant] was guilty of the crimes charged. The Court's feelings on the topic were expressed when [Appellant] asked the Court to grant his request for judgment of acquittal.

When faced with such a motion, a trial court must adhere to a certain standard[:]

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. The standard we apply in reviewing the sufficiency of the evidence is whether reviewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt.

***Commonwealth v. Hutchinson***, 947 A.2d 800, 805-806 (Pa. Super. 2008) (citations and quotations omitted). The Court complied with this standard. It articulated the factual inferences it was allowed to draw. It made reference to the elements of the crime. It commented on how the facts and the law coalesced in such a way that it was the jury's job to decide what the true facts were. ***Commonwealth v. Neary***, 512 A.2d 1226, 1233 (Pa. Super. 1986) ("It is noteworthy that not only was the jury not exposed to any comments made by the judge, but such remarks were within the judge's right to comment on the strengths and the weaknesses of the case.").

Trial Court Opinion, 8/5/13, at 32-34.

After reviewing the trial transcript, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for recusal. In support of his claim, Appellant asserts:

> [Appellant] contends that nothing could lend to a greater question of judicial impartiality [sic], when the trial judge makes a statement in front of the jury, that he believes [Appellant] committed the acts that constituted the violation of which he was accused. That not only sent a wrong message to the jury, but it also served as a warning that the judge would never rule favorably on any dispositive or other important motion brought by [Appellant] during the trial that could have resulted in the charges being dismissed.

Appellant's Brief at 27. Appellant does not provide a citation to the record to support his assertion. Assuming that Appellant is referring to the trial court's comments made before denying his motion for judgment of acquittal, we note that the comments were made outside the presence of the jury. **See** N.T., 9/4-9/6/12, at 233. The fact that Appellant disagrees with the trial court's denial of his motion for judgment of acquittal does not establish a basis for recusal. Thus, Appellant's second issue is meritless.

In his third issue, Appellant argues that the acts for which he was charged were "*de minimus* to the point where the Trial Court should have dismissed the charges brought against" him. Appellant's Brief at 3. Appellant's *de minimus* argument was the basis for his motion for judgment of acquittal. Once again, Appellant provides argument that is devoid of citation to the relevant statute or pertinent case authority. Thus, his undeveloped claim is waived. **Spotz**, **supra**.

- 13 -

Appellant further argues that the trial court mislead him by stating that the *de minimus* determination would be made by the jury. According to Appellant, he tailored his defense strategy given this belief, and was prejudiced when the trial court addressed the issue in denying Appellant's judgment of acquittal. **See** Appellant's Brief at 30-31. Our review of the record refutes Appellant's claim. In response to Appellant's assertion that the trial court "just said that you believe the defendant to be guilty," the trial court responded:

> THE COURT: That's not my position. My position is, would I grant a Motion for Judgment of Acquital [sic]? No. Would I - - would I find this a de minimus infraction? No; but I'm not the finder of fact. This is a jury trial.
>
> My responses are to procedural questions and standards, from the standards I have to adhere to. That's where my rulings come from; but I won't in any way prejudice you, whatever appeal you want to make to the jury. I think I have been very liberal in the course of this trial, trying to give you as much latitude as possible given the dynamics of this situation; but I don't know what else to do in this situation other than to allow you to proceed as requested.

N.T., 9/4-9/6/12, at 237-238.[2] In a response to a request by Appellant that he be permitted to refer to a *de minimus defense*, the trial court further stated: "Sure. I mean, I'll give you some latitude." *Id.* at 243. Thus, the

_____

[2] The trial court was referring to Appellant's decision to represent himself at trial.

record refutes Appellant's claim that his defense was hampered by the trial court.

In his final claim, Appellant asserts that the trial court erred in refusing to include his proposed jury instructions in its charge to the jury. According to Appellant, the trial court further erred in failing to conduct a conference or hearing on the instructions, and "summarily denied 14 of 19 instructions proposed by [Appellant], despite the fact that 9 of those had legal authority to support them." Appellant's Brief at 35. Our review of the record reveals that although Appellant asked the trial court to make certain clarifications, he did not object following the trial court's charge to the jury. *See* N.T., 9/4-9/6/12, at 374-379. Thus, the claim is waived. ***See generally*** Pa.R.A.P. 302(b); ***Commonwealth v. Sanchez***, 82 A.2d 943 (Pa. Super. 2013).

Absent waiver, Appellant's claim is meritless. "When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law." ***Commonwealth v. Roser***, 914 A.2d 447, 455 (Pa. Super. 2006) (citation omitted).

Our standard for reviewing such a challenge is well-settled:

> In reviewing a challenged jury instruction, we must review the charge as a whole and not simply isolated portions, to ascertain whether it fairly conveys the required legal principles at issue. We are reminded, as well, that a trial court possesses broad discretion in phrasing its instructions to the jury and is not limited to using particular language provided that the law is clearly, adequately and accurately presented to the jury.

*Commonwealth v. Bracey*, 831 A.2d 678, 684 (Pa. Super. 2003), *appeal denied*, 844 A.2d 551 (Pa. 2004) (citations omitted). "A jury instruction will be upheld if it clearly, adequately, and accurately reflects the law." *Commonwealth v. Smith*, 956 A.2d 1029, 1034-35 (Pa. Super. 2008) (*en banc*) (citation omitted). Our review of the trial court's entire jury instructions meets this standard.

In sum, because Appellant's claims on appeal are waived or otherwise without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Donohue concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014